### The P. C. Hanford Oil Company *et al.*

*v.*

### The First National Bank of Chicago.

*Filed at Ottawa October 2, 1888.*

1. Insolvent debtors—*powers and jurisdiction of county court—in case of voluntary assignment.* Where a voluntary assignment is made under the statute, and the property has passed into the hands of the assignee, the property is thereby brought under the administrative control of the county court, and that court is invested with ample power and jurisdiction to make all orders in respect thereof necessary to the

distribution under the law, and to that end to adjudicate upon and determine the conflicting rights of claimants thereto.

2. SAME—*assignee—his relation as between debtor and creditor.* The assignee, in cases of voluntary assignments for the benefit of creditors, is not the representative of the creditors, but the agent of the assignor for the distribution of the property, and the assignee's agreement with one creditor will in no way bind or conclude another creditor.

3. SAME—*priorities among creditors—adjusted by county court.* The county court has the power to determine whether certain executions have or have not the prior lien, and entitled to be first paid out of the debtor's estate, and make all proper orders to protect the rights of all parties in interest.

4. SAME—*preferences among creditors.* Notwithstanding the Voluntary Assignment act, a debtor. though insolvent, may still secure, by mortgage or confession of judgment, or otherwise, a *bona fide* indebtedness, if done in good faith, and not in contemplation of making an assignment under that act.

5. Where the debtor enters upon a course of conduct having for its object the disposition of all his estate for the benefit of his creditors, and, as part of the plan by which to effect that object, executes a general assignment, the distribution must be to his creditors in proportion to the amounts of their respective claims. If he takes steps whereby to give one creditor preference over another, his action will be fraudulent and void.

6. A debtor had, on October 13, 1884, given his note to a bank, which authorized the entry of judgment by confession at any time the payee might think proper, and it was agreed that the maker should give the bank timely notice in case of financial distress, so that it might take measures to secure itself. On December 15, 1884, the debtor had prepared a general assignment of his property, which was not, however, executed until on the 17th. Shortly before the execution of the assignment, the bank was notified of financial trouble and of the proposed assignment, and in consequence of such information took a judgment by confession, and had a levy made on the debtor's property before possession taken by the assignee: *Held,* that the judgment in favor of the bank, and the levy of its execution, were fraudulent as against the other creditors, and gave no priority in favor of the bank.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

The firm of Ferris & Avery were merchants doing business in Chicago. On the 13th day of October, 1884, they being in good credit, though really insolvent, borrowed of the appellee bank $1600, and gave their note at ninety days, accompanied with a power of attorney to confess judgment thereon at any time before or after the note became due. Counsel for appellee, in his statement of facts, says: "There was a more or less definite understanding between the bank and Ferris & Avery, antedating this particular loan, and not specifically referring to it, that if, at any time, the firm got into financial trouble, the bank should be informed in time to have opportunity to get the benefit of its security by entering judgment." This statement is substantially in accordance with the evidence.

On the 11th day of December, 1884, Ferris & Avery, being pressed by creditors from abroad, consulted their attorney, who decided they could not go on, and advised an assignment, to which the debtors assented, but were anxious to prefer certain of their creditors, especially the appellee bank, and the Merriam & Morgan Paraffine Company, to which they owed something over $5000. Their attorney advised against making preferences, and a deed of assignment was ultimately prepared so as to show no preference. The assignment was prepared Monday, the 15th day of December, 1884, but was not executed or delivered until the 17th. On the 15th the assignee was called in, and consented to serve as assignee. On the 16th (Tuesday) the debtors gave to the Paraffine Company a judgment note for $5700, due one day after date, but upon consultation it was concluded that this note might bear days of grace, and would not be available for immediate use. Some discrepancy also existed between the amount of this note and the actual sum due, so that on the morning of the 17th of December another note, payable on demand, with like power, was substituted.

About one o'clock of Wednesday, the 17th day of December, one of the debtors went to the bank and told its vice-president

that they were in financial trouble. The attorney of the bank was called in and given the note of October 13, and, with the debtor, went to the office of the attorney acting for the debtor firm, and there met the debtors, their attorney, and the person named as assignee, and was told that Ferris & Avery "were in financial trouble, and were going to make an assignment that afternoon." The matter of the insolvency of the firm and the assignment was there talked over, and the probable effect of the assignment upon the judgments taken upon said note was discussed. The attorney for the debtor firm refused to act for the Paraffine Company in entering up judgment, and their note, and appellee's note, also, were given to Mr. Hanesy, an attorney officing in the same building, to enter up judgments thereon, with the understanding that he should so conduct the business as to give priority to the judgment of appellee. The judgment on the bank note was entered at 3 : 50 o'clock P. M., and on the Paraffine Company note at 3 : 55 o'clock P. M., and executions were immediately issued and delivered to the sheriff. Ten minutes later, at 4 :05 o'clock P. M., the assignment, duly executed and acknowledged, was filed with the county clerk and in the recorder's office. The assignee went immediately to insure the assets, as he says, but in about twenty or thirty minutes after filing the assignment, went to the store of the debtors and found the sheriff in custody, under the said execution. On the next day (December 18) the assignee presented his petition, alleging that the entire assets of the firm were in the possession of the sheriff, admitting the prior lien of both of said executions, and representing that the estate would be prejudiced by a sale thereof by the sheriff, and praying for an order authorizing himself, as assignee, to pay off said executions, severally, out of the first money derived from the sale of the estate, upon condition that the execution creditors would consent to turn the assets into his hands. On the same day, the court, by consent of the assignee and of the bank and Paraffine Company, entered

an order directing the sheriff to turn over the assets to the assignee, and ordering the latter to sell the estate, and first satisfy said executions, etc. Thereupon the entire estate was surrendered to the assignee.

On the 3d day of January, 1885, other creditors of the insolvent, including appellants, representing over $18,000 of debts, petitioned the county court to modify the foregoing order, so as not to recognize the validity of said execution liens, and to reserve to the creditors the right to contest the same. On the 6th day of January, 1885, the court modified the previous order, reserving the "right of all parties in interest to question and contest the liens, executions and judgment in such (former) order mentioned," and granting leave to file a petition for that purpose. Under that leave, a petition, and subsequently an amended petition, were filed, setting up the facts, etc., showing, as alleged, that said judgments and execution liens were an unlawful preference, and praying that they be so declared, and that the assets be distributed *pro rata* among all the creditors of said insolvents proving their claims. Upon hearing, the court set aside so much of its order of December 18, 1884, as recognized the lien of the execution issued on the judgment in favor of the Paraffine Company, but refused to modify it as to the lien in favor of appellee. From this last order the creditors appealed to the Superior Court of Cook county, where, on leave, an amended petition was filed, and, on hearing, an order was entered adjudging the execution of the lien in favor of appellee, for $1600, to be a valid first lien on the assets in the hands of the assignee, and ordering him to pay the same. The case is brought to this court by appeal from the Appellate Court.

Messrs. Trumbull, Willits, Robbins & Trumbull, for the appellants:

The judgment to the bank was an unlawful preference. *Preston* v. *Spaulding*, 120 Ill. 217; *Clark* v. *Iselin*, 21 Wall. 374; *Heineman* v. *Hart*, 55 Mich. 76.

Mr. ORVILLE PECKHAM, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principal question arising upon this record is, was the judgment of the appellee an unlawful preference, within the meaning of the 13th section of the Voluntary Assignment act. Preliminary, however, to the consideration of this question, the power and jurisdiction of the county court to make any order affecting the lien of the execution issued on said judgment are challenged.

It is the settled law in this State, that when a voluntary assignment is made under the statute, and the property has passed into the possession of the assignee, the property is thereby brought under the administrative control of the county court, and that court is vested with ample power and jurisdiction to make all orders in respect thereof, necessary to its distribution under the law, and to that end to adjudicate upon and determine the conflicting rights of claimants thereto. All of the cases determined by this court in which this question is involved, since the Voluntary Assignment act went into effect, have gone to this extent. In one of the cases last-before the court, (*Preston et al. v. Spaulding et al.* 120 Ill. 208,) while expressly holding that the act did not confer upon the county court general chancery jurisdiction, the jurisdiction of the county court to adjudicate in respect of all conflicting claims to property in the hands of the assignee, as announced in previous cases, was expressly recognized, and those cases, in that respect, approved.

Counsel concedes the law to be as stated, but insists, if we accurately comprehend his point, that although the property was in the actual possession of the assignee, it could not be considered in his legal custody, for the reason that the judgment creditors were induced to consent to a surrender of the assets held by the sheriff under the executions on their judgments, by the entry of the order of December 18, 1884, by

consent of the assignee, preserving the priority of their claims in the distribution of the estate by the assignee. The contention is without merit. Appellants had the undoubted right to contest the validity and priority of these judgments, and if it be conceded, as contended by counsel, that this could not have been done in the county court before the assignee had acquired possession of the estate, there was nothing to prevent its being done in a proper forum,—hence no substantial right of the judgment creditors was affected. Appellants were in no way bound by the agreement between appellee and the assignee, or by the consent given by the assignee. "The assignee is not the representative of the creditors, but the agent of the assignor for the distribution of the property." (*Bouton* v. *Dement*, 123 Ill. 142.) The judgment creditors, with the assignee, invoked the jurisdiction of the county court in the entry of the order preserving the priority of their execution liens, which, under the statute, the court undoubtedly had power to enter; and in procuring and consenting to said order, appellee was required to know, that while the court retained jurisdiction, the order was subject to modification or to be set aside, and, upon proper application, it was the duty of the court to set it aside or modify it, if necessary to protect the rights of parties in interest, or to distribute the estate conformably to law.

That the note of October 13, 1884, given by the debtors to the bank, (appellee,) was for a *bona fide* debt owing by them to the bank, is not questioned; and the right of the bank, then, to take, and of the debtors to give, security, can not be denied. That the power of attorney to confess judgment was taken that judgment might be entered, and thereby priority given to the bank in the event of financial trouble to the debtor firm, is also established; and if appellee, in the exercise of diligence as a creditor of the failing firm, had taken judgment, and thereby secured an execution lien prior to the assignment becoming effective, no one would question its right to do so, or that the priority should be maintained.

Notwithstanding the Voluntary Assignment act, a debtor, though insolvent, may still secure, by mortgage or confession of judgment, or otherwise, a *bona fide* indebtedness, if done in good faith, and not in contemplation of making an assignment under said act. When, however, the debtor enters upon a course of conduct having for its object the disposition of all his estate for the benefit of his creditors, and, as part of the plan by which to effect that object, executes a general assignment, the distribution must be to his creditors in proportion to the amounts of their respective claims. This question was before this court in a case of very considerable importance, and there received full consideration; and we then, with entire unanimity, announced the doctrine, that any preference obtained by the creditor, by or through the acts of the debtor, after the debtor had determined to yield dominion of his estate by making a general assignment for the benefit of creditors, fell within the prohibition of the statute, and was therefore void. (*Preston et al.* v. *Spaulding et al. supra.*) All the acts of the debtor performed with the intent and for the purpose of effecting a disposition of all his property for the benefit of his creditors, are to be regarded as a single transaction, each constituting part of the general assignment of his assets under the statute. Reference is also made to *Sartwell* v. *North,* 144 Mass. 188; *Sage* v. *Wyncoop,* 104 U. S. 319; *Winner* v. *Hoyt,* 66 Wis. 227; *Clapp* v. *Nordmeyer,* 25 Fed. Rep. 71. In the case last cited the authorities are collated, to which reference is made.

The doctrine announced by this court is, as said by counsel for appellee, "in accordance with established principles of construction," as well as in line with the decided weight of authority. It is conceded that the law in this State is as stated, but it is insisted that the rule announced is not applicable to the case at bar, for the reason that the judgment note executed to appellee on the 13th day of October, 1884, "then gave appellee whatever advantage or preference the judgment,

whenever taken in accordance with that power, would confer;" and it is said, an intention to assign, first formed months later, can not have the retroactive effect of making the advantage or preference thus obtained, an unlawful preference. It is also said, that although appellee was moved by the information from the insolvent debtors to enter judgment on said notes, such information having been given in pursuance of an understanding between the debtors and appellee that information of financial trouble would be given, the act of the debtors related back, in the same way the judgment note did, to a time anterior to the time when the intention to assign was formed, and was therefore no part of the assignment. It is manifest, from what has been said, that this will depend upon whether the preference resulted from the act of the debtors after they had determined to make an assignment, or from the diligence of the creditor. It is undoubtedly true that the law favors the diligent creditor, and he is not debarred by the statute under consideration, from taking any steps that he might previously have taken to make or secure his debt.

It is apparent from the record, that the debtors, although desiring to prefer appellee and certain other of their creditors, determined to make a general assignment for the benefit of all their creditors, on the 11th day of December, 1884,—that they were prevented from making preferences in the deed of assignment, by the advice of their counsel. The schedules and assignment were prepared by their attorneys, ready for execution, on the 15th day of the same month, but the assignment was not executed and delivered until the afternoon of the 17th. For the purpose of effecting a preference, as it is clearly shown, in favor of another creditor, the debtors, on the 16th of December, gave to the Merriam & Morgan Paraffine Company a judgment note for about $5700, due one day after date. This note not being for the exact amount due said company, and it having been determined, on consultation, that it would probably bear days of grace, and therefore

be unavailing for immediate use in entering judgment thereon, on the following morning (Wednesday, 17th,) another judgment note, payable on demand, was substituted therefor. The person chosen as assignee had been consulted as early as Monday, the 15th, and had consented to act. About one o'clock in the afternoon of Wednesday, the 17th, one of the debtors went to the bank of appellee, and advised its vice-president that his firm was in financial trouble. The attorney of the bank was called in, given the note of October 13, 1884, and, with the debtor, went to the office of the attorneys acting for the debtor firm, and there met the debtors and their attorney, and the person selected as assignee, and was told that Ferris & Avery "were in financial trouble, and were going to make an assignment that afternoon." The matter of the debtors' insolvency, and the proposed assignment, and the probable effect of the assignment upon the judgments entered upon the two notes mentioned, was then talked over, and it was then determined to enter said judgments that afternoon, in such manner as to give priority to appellee's judgment over that of the Paraffine Company. It is also shown, that it was talked over, and understood, that the sheriff should levy executions issued on said judgments, and subsequently turn the property over to the assignee. Ferris testifies, "it was an understood thing that the sheriff should be relieved, and Tifft (assignee) take possession." It is not shown, however, that the attorney of appellee participated in this last mentioned understanding. The judgment on appellee's note was entered at 3:50 o'clock P. M. on said 17th day of December, and on the Paraffine Company's note five minutes later, on which judgments executions were immediately issued, and delivered to the sheriff; and ten minutes later, at 4:05 o'clock, the deed of assignment was filed for record. Instead of the assignee immediately taking possession of the assets of the insolvents, he went, as he claims, "to have the goods insured, and within twenty or thirty minutes reached the store of Ferris & Avery,

38—126 ILL.

and found the sheriff in possession" under the executions. On the next day, in pursuance of the understanding testified to by Ferris, we find the assignee in the county court, recognizing the priority of both said execution liens, asking to be permitted to pay them in full out of the assets of the estate, and for an order on the sheriff to surrender to him the custody of the property in the sheriff's possession, and the said judgment creditors consenting thereto. It is true, the attorney of appellee gives as the reason for his consent, that it was feared that if the entire estate was sold by the sheriff upon execution, sufficient would not be realized to pay both of said judgments, while in the hands of the assignee it could be more economically disposed of. It is conceded that up to the time when Ferris notified the vice-president of appellee that his firm was in financial trouble,—about one o'clock of the day on which the judgments were entered and the assignment filed,—the appellee had no notice of the condition of said debtor firm, or any intention whatever to enter judgment on its note, and it is apparent that appellee was put in motion solely by the affirmative act of the debtor in giving such notice.

It is manifest from the foregoing, that the fact that appellee's judgment was entered in advance of the filing of the deed of assignment, was due to no diligence on the part of the creditor, but was the result of the expressed intention of the debtors to give a preference to appellee. But for the affirmative act of the debtors, the deed of assignment would have gone upon record, and the title to the estate vested in the assignee for ratable distribution among all their creditors. The simple question therefore is, does the fact that appellee took its judgment note with the understanding that the debtor, in case of financial trouble, should notify it, take the case out of the rule announced in *Preston* v. *Spaulding.*

It is conceded, as it must be, that by taking the judgment note no lien was thereby given to appellee, nor was any right or priority thereby acquired over the general creditor. Some-

thing more was required to effect priority,—the power given must be exercised. The vice of the contention consists in supposing that in some way, not easily understood, the creditor to whom the judgment note is given has some right, superior to other creditors, over or against the estate of the common debtor. If any such right existed, it would, from its very nature, necessarily be secret, and for that reason not favored by the law. Suppose that prior to the determination of these debtors to make an assignment of their estate for the benefit of creditors, they had executed to persons other than appellee, for *bona fide* indebtedness, like judgment notes, and coupled with the like agreement,—then, when financial trouble came, they so timed their notice that one perfected his execution lien at one hour, and another at a subsequent hour, and so on, and had left appellee to acquire the last lien,—will it be contended that the priority of the execution liens, depending, as it does, upon the date when the execution comes to the hands of the officer, had any relation to the time of the execution of the judgment notes, or in the slightest degree depended upon the agreement referred to? Manifestly, the efficient cause of the priority would, in the case supposed, be the act of the debtor, which had enabled one creditor to secure his execution in advance of the others. If the doctrine contended for should be established, then creditors other than appellee will avail of its benefits by taking judgment notes with a like agreement for notice. Favored creditors would be notified in time, as was here done, to enter judgments sufficient to absorb the entire estate, and others less favored, although having used equal diligence and standing upon the same footing, would find their powers of attorney and agreements for notice wholly unavailing, and would be left to the useless ceremony of proving their claims under the assignment in an estate after favored creditors had taken the entire assets.

If, instead of executing the power of attorney with the agreement mentioned, the debtor should execute a chattel

mortgage to his creditor, with an agreement that it should not be placed of record until financial trouble came, of which notice should be given by the debtor, and the debtor, after determining to assign for the benefit of all his creditors, should give the notice, and the chattel mortgage be filed for record, could it be contended that such mortgage would have a better standing than, or priority over, another mortgage executed and recorded contemporaneously with the first mentioned mortgage? Obviously not. Yet it will be conceded that the mortgage last mentioned would fall directly within the rule announced by this court in its previous decisions, and would, with the deed of assignment, be considered one transaction, having for its object the disposition of the testator's estate for the benefit of his creditors, and the preference thereby attempted to be created be declared void.

It is, however, said, that the act of the debtors, "done after they had formed the purpose of making a general assignment, for the purpose and with the view of aiding the bank in rendering its security and intended preference effectual, must be considered as belonging to and forming a part of the transaction of creating such preference, and not as forming a part of the transaction making the general assignment," and the reasoning in the case of *Lampton et al.* v. *Arnold,* 19 Iowa, 477, *et seq.,* is referred to as sustaining that position. That case was before this court in the determination of the case before referred to, and can be, as it was by the same court in the subsequent case of *Van Patten et al.* v. *Burr,* 52 Iowa, 518, distinguished in its facts from the cases where the doctrine of *Preston* v. *Spaulding* has been announced. In the *Van Patten* case the court say: "We think it (the *Lampton case*) may be readily distinguished from the case before us. * * * It will be observed that the opinion is based upon the right of the insolvent to appropriate his property while he may exercise over it the *jus disponendi,* the statute simply limiting his right to prefer creditors where he makes a general assignment. The

court rightly held that the payment by the insolvent, and the assignment, did not constitute one transaction." But that court adds, distinguishing the case then under consideration from the former case: "But if, with the intention of disposing of all his property for the benefit of his creditors, he mortgages part and assigns the remainder, these constitute one transaction. The property passes to the mortgagee and assignee in trust, to be disposed of as required by law and the conditions of the instruments he executed. The law announced by this court in *Burrows et al.* v. *Lehndorff*, 8 Iowa, 96, and *Cole* v. *Dealham*, 13 id. 551, regards the transaction as an assignment, and if a part of the creditors are preferred, it is void under the statute." Moreover, *Lampton et al.* v. *Arnold, supra*, is, it seems, placed upon the ground that the statute should receive a restricted construction. It is said, "the statute does not, expressly or by implication, extend any further, or apply to any instrument or conveyance other than to a general assignment," and that the word "assignment" was used in the statute in its technical sense. All the other cases in that court so hold, as is shown by the extract before given from the *Van Patten case*, and which is in harmony with the ruling of this court.

Without extending the discussion further, it seems clear to us that the preference obtained by appellee was not by reason of any diligence on its part, but resulted solely, as has been said, from the affirmative act of the debtors. It is difficult to perceive the distinction between the case of appellee as made, and a case where the debtor has agreed to give security, in the event that security becomes necessary, to protect the creditor, and the security is given after the debtor has entered upon the general disposition of his estate for the benefit of all his creditors. In the latter case, the right of the creditor to priority would exist only from the time the security was taken, and could not relate back, upon any known principle, to the time when his debtor agreed to secure him. In this case it

is clearly shown that the debtors were especially desirous of securing this creditor, and so expressed themselves,—that the taking of the judgments, filing of the assignment, taking possession of the property, in fact all the different steps, were so planned and timed as to carry into execution this determination on the part of the debtors.

We are of opinion, unless we recede from the previous rulings of this court, that where the preference is so closely connected with the assignment as to raise the presumption that it was part of the same general intent to dispose of all the property of the debtor, or it is shown that the preference results from the act of the debtor while contemplating a general assignment, the preference must be held to constitute a part of the general assignment, and therefore void. The preference secured by appellee, for the reason that it resulted alone from the acts of the debtors after they could rightfully thus dispose of their estate, although done in pursuance of a previous agreement, constituted, with the assignment, but one transaction, having for its object the disposition of all the property of the debtors, and falls clearly within the spirit of the statute prohibiting preferences.

This case is distinguishable from *Field et al.* v. *Geohegan. et al.* 125 Ill. 68, in the fact that the preference was there the result of the diligence of the creditor, and did not result from any affirmative act of the debtor.

The judgments of the Appellate, Superior and county courts will therefore be reversed, and the cause remanded to the latter court for further proceedings in conformity with this opinion.

*Judgment reversed.*


Mr. Justice Bailey, having heard this case in the Appellate Court, took no part in this decision.