J. MARION FORT, Admr.

*v.*

CORNELIA P. RICHEY, Admx.

*Filed at Ottawa May 16, 1889.*

1. CONVEYANCES—*separate contract as to payment—the deed and contract construed together.* A father conveyed his farm to his son on July 30, for the expressed consideration of $5000, of which one-half was paid down. On the 5th of August following, the son gave the father, for the balance due, his obligation to pay the latter $175 per annum during his life, and as much more as might be necessary to the father's support and comfort, containing a proviso, however, that the total of such payments or advances should not exceed $2500, and interest thereon : *Held,* that the contract of the son, and the deed to him, though bearing different dates, were parts of the same transaction, and should be construed together, as they both related to the same subject matter, and were based upon the same consideration.

2. SAME—*contract as to payments—construed—as to liability being discharged after payment in part.* A father conveyed land to his son for the expressed consideration of $5000. The son paid $2500 in cash, and gave his written agreement to pay the father, as an annuity, the sum of $175 during the life of the latter, and such further sums as might be necessary to minister to his comfort or satisfaction, but it was therein provided that the total of all such payments and advances should not exceed $2500, and interest thereon. The yearly payments were made during the father's life, amounting to $1410 : *Held,* that the son was not liable to the father's estate for the balance of the $2500, or purchase price, and that his liability was discharged by performance of his written agreement to pay the annuity during his father's lifetime.

3. SAME—*consideration—as expressed in the deed—whether conclusive.* A deed, by expressing a consideration, does not necessarily import that such sum is to be paid by the grantee to the grantor in any event, so as to fix an indebtedness independent of a cotemporaneous agreement of the parties fixing the mode of payment and determining the amount which shall ultimately be paid. It is competent for the parties to agree upon a different consideration, or to agree that the consideration recited in the deed shall be payable only conditionally, and if they do so, and reduce their contract to writing, the same conclusive presumptions will arise as in other cases,—that all the terms of their contract are embodied in the writing.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Henderson county; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. Kirkpatrick & Alexander, for the appellant:

The only effect of the consideration clause in a deed is to estop the grantor from alleging that it was executed without consideration, and to prevent a resulting trust in the grantee. For every other purpose it may be varied by parol. Wharton on Evidence, 1042, and note.

When it was shown that half the consideration was not paid in money, and that in respect to it there existed a written contract, that was an end of the claimant's case. A written contract can not be varied by parol. *Gardt* v. *Brown,* 113 Ill. 475.

It is the duty of courts, in construing contracts, to discover and give effect to the intention of the parties. *Field* v. *Leiter,* 118 Ill. 17; *Wilson* v. *Roots,* 119 id. 379.

Courts have no right to make a contract, either by rejecting some of its provisions or by adding new ones, nor by placing upon its provisions an arbitrary construction. *Welsch* v. *Savings Bank,* 94 Ill. 191.

In the interpretation, we ought not to deviate from the common use of the language. Potter's Dwarris, 127.

In seeking the intention of the parties to a written contract, the courts are not authorized to construe the words used otherwise than in accordance with their plain, natural and obvious meaning, unless, from a consideration of the entire evidence, it shall appear that the parties did not intend to so use them. *Manufacturing Co.* v. *Cook,* 16 Bradw. 161.

The son saw that the wants and comforts of the old gentleman might reach such a sum as would bankrupt him or his estate. So, then, there were three matters that required attention: First, that $175 per year was to be paid in any event; second, if that was not sufficient for the necessities and comfort of the old gentleman, then such additional sums as might

be required was to be paid; third, it was possible that these wants and necessities might become a greater burden than the son was willing or able to bear. So, in order to avoid trouble in that direction, a limit,—a maximum sum beyond which he could not be required to pay,—must be fixed.

Messrs. GRIER & STEWART, for the appellee:

The recital in the deed *prima facie* proves the consideration to have been $5000, and in the absence of other competent proof, the law presumes that this consideration was to be paid in money on the delivery of the deed.

The deed was proper evidence to show the purchase of the land, and the amount to be paid therefor, and the oral evidence was proper to show the consideration to be paid for the land, and to contradict the recital of payment in the deed.

That we had a right to make this oral proof, seems to be admitted by counsel and substantiated by their authorities, when they say, in their argument, "The amount of consideration, and its receipt, are open to explanation by parol proof in every direction." In addition to the authority referred to by them, we would refer the court, on the same point, to the following: *Ayers* v. *McConnel*, 15 Ill. 230; *Kimball* v. *Walker*, 30 id. 482; *Jones* v. *Buffum*, 50 id. 277.

There is nothing in the contract of August 5, 1881, showing an intention to release any portion of the purchase price of the land.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

Cornelia P. Richey, administratrix of the estate of Richard W. Richey, deceased, filed in the County Court of Henderson county a claim against the estate of Thomas G. Richey, deceased, for the unpaid balance of the purchase money of certain lands sold and conveyed by Richard W. Richey to Thomas G. Richey in their life time. Said claim was contested by the administrator of Thomas G. Richey, and on trial in that court

the sum of $1547.60 was allowed to the claimant. On appeal to the Circuit Court the claim was disallowed, but on a further appeal to the Appellate Court the judgment of the Circuit Court was reversed and the cause remanded to that court for a new trial. Another trial was thereupon had in the Circuit Court before the court without a jury, resulting in a finding and judgment in favor of the claimant for $1750. This judgment was affirmed on appeal by the Appellate Court, and by a further appeal the record is brought to this court.

At the trial the following facts appeared : Thomas G. Richey was a son of Richard W. Richey. On the 30th day of July, 1881, Richard W. Richey and wife executed a deed to Thomas G. Richey conveying to him certain lands, said deed reciting that the conveyance was made "for and in consideration of five thousand dollars in hand paid." It seems to be conceded that $2500 of the consideration was paid at the time. For the remaining $2500 Thomas G. Richey executed and delivered to Richard W. Richey the following agreement :

"KIRKWOOD, ILLS., *Aug. 5, 1881.*

"For a valuable and sufficient consideration, I hereby agree, binding my heirs and executors or administrators to the same, to pay R. W. Richey one hundred and seventy-five dollars, on the fifth day of August of each year during his natural life.

"Should said annual payment prove insufficient for the necessities, wants or comfort of the said R. W. Richey, I, by these presents, bind myself and heirs to advance such additional sums of money as may from time to time be required or necessary to supply all such wants, or to in any way minister to his comfort or satisfaction : Provided always, and this pledge is made on condition that the sum total of all such advances and payments shall not exceed the amount of interest and principal of twenty-five hundred dollars. Interest commencing on same Aug. 5, 1881, and reckoned at the rate of seven per cent per annum.                    THOMAS G. RICHEY."

In addition to the deed and agreement, evidence was introduced on behalf of the claimant of certain statements made by Thomas G. Richey in his life time and subsequent to the date of the agreement as follows: John Marshall, a brother-in-law of Richard W. Richey, testified: "Thomas told me that he had purchased the two eighties and that he was to pay $5000 for them. He said that $2500 of the money was left in his hands to be paid to his father as it might be necessary. He said they had a contract about it, but did not tell the nature of the contract. He spoke to me several times about paying money on it. He said they thought the money would be safer in his hands than with his father; that his father might spend it faster than necessary if he had it. He said it was to be paid to him from time to time as he might need it. I had one of these conversations with Thomas about a month or six weeks before he died. He said he thought he had paid about $1400 or $1500 on the contract." On cross-examination the witness said: "Thomas said he had a written contract with his father in regard to the matter. Have seen the contract since R. W. Richey died. This is the contract," (referring to the contract above recited). Edward Richey testified that Thomas G. Richey told him that he had purchased the farm and agreed to pay his father as he needed it; "that he thought it best to get it fixed up as his father was getting frail. He said he thought it best for him to keep the money for him, as he might spend it if he got it."

It was proved that Thomas G. Richey died in December, 1885, and that he had then paid on the contract with his father the sum of $1410.60. After his death, and prior to the death of his father which occurred in February, 1886, his legal representatives paid on said contract the sum of $156.25.

The foregoing being all the evidence, the defendant's counsel submitted to the court the following propositions to be held as the law in the decision of the case which the court marked "refused," viz.:

1. "The court finds that the sole and only cause of action in this case is upon the contract in evidence, dated August 5, 1881.

2. "As a matter of law, the court holds that, under the contract in this case dated at Kirkwood, Ill., August 5, 1881, signed by Thomas G. Richey, said Thomas G. Richey, his heirs, executors or administrators, were not bound to pay said R. W. Richey more than $175 per year, or if that should prove insufficient, then such additional sum or sums of money as might from time to time be required or necessary for the wants, comfort or satisfaction of said R. W. Richey.

3. "As a matter of law, the court holds, that under the contract in this case, dated August 5, 1881, signed by Thomas G. Richey, neither he, the said Thomas G. Richey, nor his heirs, executors or administrators, were bound to pay any sum whatever after the death of said R. W. Richey, unless during his life said Thomas G. Richey or his heirs, executors or administrators, should fail to pay said sum of $175 per year, or a sum sufficient for the necessities, wants or comforts of said R. W. Richey during his life."

By these propositions the proper construction to be placed upon said contract, and the liability of the estate of Thomas G. Richey under the evidence, are directly presented as questions of law, and those questions are therefore open for consideration in this court.

First, then, does the evidence tend to establish any liability on the part of Thomas G. Richey or his estate apart from and independent of the contract? It can not be doubted that the contract and deed are parts of the same transaction, and that they should therefore be construed together. True they bear different dates, the deed being dated July 30 and the contract August 5, but both relate to the same subject matter and are based upon the same consideration, the contract being given in consideration of $2500 of the purchase money named in the deed. The deed, by expressing a consideration of $5000, did

not necessarily import that that sum was to be paid by the vendee to the vendor in any event, so as to create an indebtedness existing independently of their cotemporaneous agreement fixing the mode of payment, and determining the amount which should be ultimately paid. It was competent for the parties, notwithstanding the recital in the deed, to agree upon a different consideration, or to agree that the consideration recited should be payable only conditionally, and as they have entered into such contract and reduced it to writing, the same conclusive presumptions arise as in other cases, that all the terms of their contract are embodied in the writing. If then the estate of Thomas G. Richey is still liable for any portion of the purchase money of said land, such liability must arise from the terms of the agreement of August 5, 1881, and the existence of such liability must be determined solely by the provisions of that instrument.

The contract itself is simple and its terms are free from any material ambiguity. As it appears in the record, it consists of two paragraphs. The first paragraph provides merely for the payment by Thomas G. Richey to Richard W. Richey of an annuity of $175 during his natural life. The second paragraph provides that, in case the annuity should "prove insufficient for the necessities, wants or comforts" of Richard W. Richey, Thomas G. Richey should pay such additional sums of money as should be required or necessary, from time to time, "to supply all the wants or to in any way minister to the comfort or satisfaction" of Richard W. Richey, with the proviso, however, that the aggregate of the payments to be made under the contract should not exceed the sum of $2500 and interest thereon at the rate of seven per cent per annum from the date of the contract. This was all Thomas G. Richey agreed to do. It was in substance an agreement to provide for the support and maintenance of Richard W. Richey during his natural life, in such manner that all his necessities, wants and comforts should be supplied, the total expenditure in that behalf

not to exceed the $2500 and interest. This was a contract which it was perfectly competent for the parties to make. Richard W. Richey had a right to sell his farm to his son for $2500 cash and a contract by his son to support and maintain him during life, and the rights and obligations of the parties are in no respect affected by the fact that the cash payment and the ultimate amount which his son might become liable to pay under the contract were added together and inserted in the deed as the consideration of the conveyance.

No pretence is made that Thomas G. Richey did not fully perform his contract so long as he lived, or that his legal representatives did not perform it after his death during the residue of the life time of Richard W. Richey. Upon what theory then can it be said that a balance still remains due on said contract from his estate? The contract contains no promise or undertaking, either in terms or by implication, to pay such balance. An attempt is made to obtain an interpretation favorable to the theory of the claimant by transposing the several clauses of the contract, but the transposition insisted upon consists not only in taking the proviso for the principal clause, but in changing that which was manifestly intended merely as a limitation upon the ultimate amount which Thomas G. Richey should be called upon to pay, into an absolute promise to pay that amount in full. We know of no rule which can justify the courts in taking such liberties with contracts under guise of construing them. It would have the effect of-importing into them terms to which the parties have never agreed, thus in reality making contracts for the parties instead of giving construction to such as they have made for themselves.

We are of the opinion that the construction of said contract contended for by the defendant is the true one, and that the foregoing propositions submitted by the defendant's counsel to be held as the law in the decision of the case were substantially correct and should have been adopted by the court. It follows that the Circuit Court erred in refusing said propo-

sitions, and that the Appellate Court erred in affirming the judgment. The judgments of the Circuit and Appellate Courts will be reversed, and the cause will be remanded to the latter court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*