GORRELL v. HOME LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1894.)

No. 158.

1. NEGOTIABLE INSTRUMENTS—PLEA—ULTRA VIRES—CORPORATIONS.
    In an action upon a note payable to an insurance company, a plea that the taking of such a note was an ultra vires act is not good.

2. SAME—PAROL EVIDENCE TO VARY NOTE.
    Oral evidence is not admissible to show that a note absolute in its terms is payable only out of a particular fund.

3. SAME—EVIDENCE—LETTER.
    A note by which the maker agreed to pay a certain sum of money, and to allow certain commissions accruing to him to be retained by the payee on account of the note, was sent by the payee to the maker for signature in a letter in which the payee wrote that the note, "as you will see, we have made payable from your commissions." *Held*, that the letter merely called attention to the provisions of the note, and did not make it payable only out of the commissions.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Assumpsit by the Home Life Insurance Company of New York against William F. Gorrell. Plaintiff obtained judgment. Defendant brings error.

The circuit court directed a verdict and gave judgment against the plaintiff in error for $6,088.57. Besides the common counts in assumpsit, the

declaration contained a special count, in support of which the following promissory note was adduced in evidence:

"$7,500.00.                                                        March 19, 1891.

"On demand, after date, I promise to pay to the order of Home Life Insurance Co. seventy-five hundred dollars, at its office, 254 Broadway, N. Y. City. Value received, with interest at six per cent. per annum. And I further agree to allow all renewal commissions accruing to my account on and after January 1st, 1892, to be retained by said company, to be applied to the liquidation of this obligation.                    William F. Gorrell."

Indorsed: "Dec. 14/91, interest paid to Dec. 19/91, $337.50. Dec. 14/91, paid on account $112.50. Jan. 4/92, paid $1,000. Feb. 29/92, paid $1,000."

To the special count the plaintiff in error presented four special pleas: First (in substance). That the Home Life Insurance Company is a corporation of New York, and does insurance business in Illinois without being organized under her laws or the laws of the United States as a banking institution, and that the note sued on was executed in Illinois for money loaned to the plaintiff in error in Illinois. Second. That the defendant in error was organized in New York as a life insurance corporation, and not as a banking corporation; that by the law of New York no corporation not expressly incorporated for banking purposes possesses the power to discount bills, notes, or other evidences of debt; and that this cause of action arises out of the fact of the defendant in error having discounted the note in suit. Third. That the defendant in error, organized under the laws of New York for the purpose of insuring lives, and to grant, purchase, or dispose of annuities, giving policy holders an interest in the profits of the company, was authorized to loan to policy holders a sum not exceeding one-third of the annual premium of the policies held by each, and to secure the loan by the pledge of the policy and the profits accruing thereon, and to invest other funds and accumulations in such manner as then was or might be thereafter prescribed by law; that when the note in suit was made it was the law of New York that life insurance companies might loan surplus moneys upon the security of mortgages of real estate in New York, or within fifty miles of the boundary thereof; that the note sued on was never secured by mortgage on realty, or in any manner except as shown upon its face; and that the money so loaned exceeded by more than one hundred times the one-third amount of the annual premium of any policy of the company held by the plaintiff in error. Fourth. That the note was without consideration because the plaintiff in error was the general agent of the defendant in error, and received the money upon an agreement that it should be expended in soliciting business for the company; that it was so expended; and that the note was to be paid only out of renewals which should accrue to the credit of the plaintiff in error. To these pleas a general demurrer was interposed and sustained, whereupon the plaintiff in error pleaded the general issue. The evidence in the case consisted of the note described in the declaration, and a verified computation of the amount due upon it, and of the following correspondence offered in defense:

"New York, March 11, 1891.

"W. F. Gorrell, Chicago—Dear Sir: We do not wish to make loans on farm lands. If we were to do so, we could soon place all the money we have in that class of securities. We will loan you to the extent of $7,500 at 6 per cent., taking your note secured by your renewal interest, leaving you free to use the money as may appear advantageous to you. This is the same offer as was made to you on January 26, last, when you proposed getting an application for $10,000 insurance, which afterwards fell through; and, if you should now succeed in getting some applications by those means, we wish to remind you of the conditions then named as to the necessity of a full and rigid examination by some allopathic physician of high standing.

"Yours, truly,                          Charles A. Townsend, President."

"March 16, 1891.

"Mr. W. F. Gorrell, Chicago—Dear Sir: We had expected that the money asked for would only be required as you gave us the specific amounts of

the mortgages you might from time to time think it desirable for yourself to invest in, but nevertheless will send the $7,500, on your signing and returning us the inclosed note, which, as you will see, we have made payable from your renewal commissions maturing from and after the first of January next. As a matter of record, we ask you to furnish us a statement of location and description of the property in which you invest.

"Yours, truly,                    Charles A. Townsend, President.

"The date is to be filled in before signature."

"August 19, 1891.

"W. F. Gorrell, Chicago, Illinois—Dear Sir: As to the payment of interest on your note, we will receive it at any time you choose to send it, but can make no conditions as to its payment before it is due. We have so much money to invest that we can make no discounts for prepayment of any funds due us. * * *                    George H. Ripley, Vice President."

"Chicago, Illinois, December 16, 1891.

"C. A. Townsend, President, New York—Dear Sir: According to the terms of my note for $7,500, most of which I have loaned at six per cent. interest, I am to pay it out of the renewals after January 1st, 1892. I have given the matter considerable thought the last few days, and it does seem to me that this will cause a good deal of extra clerical work both here and there. I would like to pay it a thousand dollars at a time, if it would suit you just as well. That is, every time I get a thousand dollars I will send you check for same, and it would not take long this way to pay it off entirely. I will have a thousand dollars in a very few days, and will be glad to hand it to you, if you will accept it. Please advise me. I can now place $3,000, at 6 per cent., on a good farm in Champaign county; but I do not have the fund to do it myself, and I wish you would furnish that, as I will be responsible for every dollar. * * *

"Respectfully,                    William F. Gorrell."

"New York, December 18, 1891.

"Mr. W. F. Gorrell, Chicago—Dear Sir: With regard to your personal note for $7,500, you can, if you prefer, send us, as you propose, the $1,000 on account of it; and we will then take a new note for $6,500, putting the clause as to its reimbursement from renewals further ahead, as suits your convenience. For the present this is all we can do in this direction.

"Yours, truly,                    Charles A. Townsend, President."

"December 21, 1891.

"C. A. Townsend, President, New York—Dear Sir: I note what you say in your kind favor of the 18th, and I thank you, indeed, for the favor. I will send you a thousand dollars in a short time, and will then advise you what to do.

"Respectfully,                    W. F. Gorrell."

"January 2, 1892.

"Mr. C. A. Townsend, New York—Dear Sir: I enclose you check for $1,000, for which please give me credit on my note, and please let it stand just as it is now. I will have it paid in a very short time, and it will save making any new note, as I don't want to do that.

"Respectfully,                    W. F. Gorrell."

It was also shown that Gorrell had been the agent at Chicago of the Home Life Insurance Company, and that on the 27th of June, 1892, his agency ceased; that the note in suit was sent him by the president of the company with the letter of March 16th, and was signed by him on the 19th,—the date having been inserted by him in a blank left for that purpose; and that the amount of the credits indorsed on the note, $2,112.50, contained all his renewal commissions received from January 1, 1892, until he ceased to be the agent of the company. The court refused to admit proof of conversations between Gorrell and the president of the insurance company, had on January 26, 1891, and in February following, to the effect and to show "that it was agreed that Mr. Gorrell should borrow $7,500 of the defendant in

error, and invest the same in the west in such manner as to procure policy holders for the company; that Gorrell expressly stated to the president that he would not take the money unless it should be repaid out of renewals collected by him as agent out of the business; that the president agreed to this condition; and that the plaintiff in error would not have made investments which he did with this money, excepting upon the faith of this agreement."

W. A. Shaw, John Stirlen, Samuel B. King, and C. M. Hardy, for plaintiff in error.

Weigley, Bulkley & Gray, for defendant in error.

Before HARLAN, Circuit Justice, and WOODS and JENKINS, Circuit Judges.

WOODS, Circuit Judge (after stating the case). It is insisted that the court below erred in three particulars: First, "in sustaining demurrers to defendant's special pleas;" second, "in refusing to permit petitioner to prove, on the trial of the cause, conversations and correspondence between plaintiff in error and C. A. Townsend, the president of the Home Life Insurance Company, in relation to the note in controversy;" third, "in directing the jury to find for the defendant in error." Waiving any question of these specifications meeting the requirements of our tenth and twenty-fourth rules, that "an assignment of error shall set out separately and particularly each error asserted and intended to be urged," and that when the error alleged is to the admission or rejection of evidence the assignment "shall quote the full substance of the evidence admitted or rejected," we are of opinion that the rulings of the circuit court were correct. Of the special pleas referred to in the first assignment of error, the fourth is distinctly different from the others, but has not been supported by argument or citation of authority, and will not be considered.

"The major proposition of the first three special pleas," says the brief in support of them, "is that a person cannot obtain advantage in a court of law of a contract made or an act done in violation of law. Ex turpi causa, etc. Each of the pleas sets forth a separate ground to sustain the proposition that the cause of action sought to be enforced in this suit grows out of a transaction forbidden by law." A plea, which, without denying the receipt and full enjoyment of the consideration, is designed to defeat an obligation to repay money loaned because the corporation which made the loan had exceeded its powers, or contravened some express or implied provision of statute, should be strictly construed, and, unless the illegality is shown by averments so unequivocal and complete as to exclude any reasonable intendment to the contrary, the contract should be upheld. By the theory upon which these pleas were drawn, neither the second nor third of them excludes the possibility or a fair presumption that the note in suit was lawfully made. The theory of the second plea is that it was a violation of the law of New York for an insurance company not organized as a banking corporation to discount bills, notes, or other evidences of debt, and so it is alleged that this

cause of action arose out of the fact of the defendant in error having discounted the note in suit. But it is not alleged that the note was given for money loaned, nor what was the consideration. If the consideration was the price of property sold, or an indebtedness of the plaintiff in error which had accrued in connection with an agency for the company or otherwise, or the accumulated amount of credits allowed him by the company for the one-third of annual premiums on policies of the company which he held, the taking or discounting of the note by the company was not a banking transaction. The third plea shows that the note was made in consideration of a loan, and concedes the power of the company to loan to holders of its policies "a sum not exceeding one-third of the annual premium of the policies held by such policy holders respectively," but alleges that the money loaned on this note exceeded by more than a hundred times the amount of the annual premium of any (one) policy of the company held by the plaintiff in error. There is in the plea no averment that the loan for which the note was given was or was not intended to be for the one-third amount of premiums accumulated upon policies of the company which were held by the maker of the note, and were pledged as security for the debt. He may, for all that is averred, have held policies upon his own life sufficient for the purpose, or may have held them upon the lives of others, in whom he had insurable interests.

But there is a more radical objection to all three of the pleas. The theory of them all is that the insurance company was forbidden to do a banking business either in New York or in Illinois, and that in discounting the note in suit it violated the law of both states. It is not claimed that the law of Illinois on the subject is express, but that by implication all corporations not organized under the general banking law of 1888 (chapter 16a, Hurd's Rev. St.) are forbidden to carry on a banking business in that state. In support of the general proposition that courts will not give effect to contracts forbidden expressly or by implication, a number of cases are cited, but they do not go to the extent necessary to sustain the pleas. Of the cases in New York, for instance, the latest cited is Trust Co. v. Helmer, 77 N. Y. 64. The answers in that case contained averments to the effect that the plaintiff kept a regular office for discount and deposit, and carried on a regular banking business, so that upon the facts alleged, as the court said, the question for determination was whether the plaintiff possessed authority under its charter to discount notes the same as any other banking institution, credit the proceeds, and pay out the same upon the checks of one of the parties, and not whether the plaintiff could lawfully buy and receive promissory notes, and advance money on the same. The distinction was declared to be, as manifestly it was, a plain one. In New Hope, etc., Bridge Co. v. Poughkeepsie Silk Co., 25 Wend. 648, a foreign corporation, in violation of an express prohibition, kept in New York an office for receiving deposits and discounting notes, and a contract of loan which was found to have grown out of the prohibited act was held to be illegal and void. It is not alleged in any of these pleas that the Home Life Insurance

Company kept an office for discount and deposit, or in any sense carried on a regular banking business, but simply that it made a loan of money upon the note in suit. Conceding, as was said in Insurance Co. v. Ely, 5 Conn. 560, that "the discount of money on a note" is an exercise of "the most important power of a bank," it does not follow that a single loan of money upon the note of the borrower by an insurance company—it may be supposed to have been, as the proof in this instance shows it was, to an agent of the company to enable him to prosecute the company's business of insurance more successfully—must be deemed to have been made in violation of the statute. At most the pleas show that in making the loan and taking the note in suit the company exceeded its powers, —did a thing which was ultra vires, but not otherwise in violation of law. In New York, however, as elsewhere, the rule is established "that the contracts of corporations, made in excess of their rightful powers, but free from any other vice, are not illegal, in the sense of the maxim 'Ex turpi causa,' etc." It was so declared by one of the judges in Bissell v. Railroad Co., 22 N. Y. 258, and has since been there and generally the recognized rule. Arms Co. v. Barlow, 63 N. Y. 62; Woodruff v. Railway Co., 93 N. Y. 609; Bank v. Jones, 95 N. Y. 115, 123; Raft Co. v. Roach, 97 N. Y. 378; Bank v. Porter, 125 Mass. 333; Woollen Co. v. Lamb, 143 Mass. 420, 9 N. E. 823; Farnham v. Canal Co., 61 Pa. St. 265, 271; Grant v. Coal Co., 80 Pa. St. 208, 218; Darst v. Gale, 83 Ill. 136; Alexander v. Tolleston Club, 110 Ill. 65, 73; Brown v. Mortgage Co., Id. 235; Gold-Mining Co. v. National Bank, 96 U. S. 640; Bank v. Matthews, 98 U. S. 621; Bank v. Whitney, 103 U. S. 99; Reynolds v. Bank, 112 U. S. 408, 5 Sup. Ct. 213; Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93; Thompson v. Bank, 146 U. S. 240, 13 Sup. Ct. 66; McBroom v. Investment Co., 153 U. S. 318, 14 Sup. Ct. 852; State Board of Agriculture v. Citizens' Street Ry. Co., 47 Ind. 407; Driftwood Valley Turnpike Co. v. Board of Com'rs, 72 Ind. 226; Platter v. County of Elkhart, 103 Ind. 360, 381, 2 N. E. 544. Contracts of national banks made in violation of express prohibitions have been upheld by the supreme court of the United States in the cases cited upon the principle, as declared in Thompson v. Bank, "that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties." In Brown v. Mortgage Co., supra (decided in June, 1884), the supreme court of Illinois, speaking of a foreign company which was organized for the purpose of loaning money on mortgage security, said: "There is nothing in the character of such a corporation contrary to public policy in this state (Stevens v. Pratt, 101 Ill. 206), and to allow the plea of ultra vires here would be to work a wrong. It would be contrary to natural right and justice." The loan involved in that suit was probably made before the banking law of 1887–88 took effect, but if a new rule or policy had been introduced by force of that act, the fact would doubtless have been mentioned by the supreme court of the state, or, to say the least,

the unqualified statement quoted of the present law or policy on the subject would not have been made.

Under the second assignment of error the only question can be of the admissibility of the oral testimony which was offered and rejected. There was no exclusion of correspondence between the parties. In so far as the oral testimony which was offered is identical with the contents of the letter of March 16, 1891, its exclusion was harmless, because the letter itself is in evidence, and oral proof to the same effect was needless; and, in so far as the proposed testimony goes beyond the letter, it was properly rejected. Union Stock-Yards & Transit Co. v. Western Land & Cattle Co., 18 U. S. App. ——, 7 C. C. A. 660, 59 Fed. 49. Its admission would have been in plain violation of the familiar rule "which precludes the admission of parol evidence to contradict or substantially vary the legal import of a written agreement." In Renner v. Bank, 9 Wheat. 581, 587, quoted in Martin v. Cole, 104 U. S. 30, 38, it is said that "there is no rule of law better settled or more salutary in its application to contracts." The contract before us—the note in suit—is complete in its terms. It contains an absolute promise to pay on demand a stated sum, and the consent of the maker is expressed that renewal commissions accruing to his account may be retained by the company and applied in liquidation of the obligation. The rule that where an oral agreement has been but partially reduced to writing the whole agreement is open to proof is not applicable. The proof proposed here was of an agreement inconsistent with the writing, which in itself is complete and unambiguous. The written promise to pay is absolute. By the proposed proof that promise would have been nullified, and the note converted into an agreement that the sum named should be paid out of accruing commissions, and not otherwise. The case is clearly distinguishable from Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, where evidence was admitted to show a parol agreement that a note should not become operative as a note until the maker could examine the property for which it was given. That attack was upon the delivery, and not, as in this case, upon the meaning of the terms of a note, of the delivery of which no question has been made either in the pleadings or proofs.

The remaining question is whether the court erred in directing a verdict, and that depends upon the force of the correspondence between the parties which was admitted in evidence. In support of the contention of the plaintiff in this respect four propositions are advanced, and authorities cited to establish them:

(1) That all the writings between the parties must be construed together. Bish. Cont. § 165; Crop v. Norton, 2 Atk. 74, 75; Colbourn v. Dawson, 4 Eng. Law & Eq. 378; Stacy v. Randall, 17 Ill. 467; Fort v. Richey, 128 Ill. 502, 21 N. E. 498; Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584, 21 N. E. 483.

(2) That a promissory note payable from a designated source or fund is contingent upon the existence and quantity of the source or fund. Schmittler v. Simon, 114 N. Y. 176, 21 N. E. 162; Bradley v. Marshall, 54 Ill. 173; Bailey v. Cromwell, 4 Ill. 71;

Josselyn v. Lacier, 10 Mod. 294; Worden v. Dodge, 4 Denio, 159; Cook v. Satterlee, 6 Cow. 108.

(3) That where parties thereto have placed a construction upon their contract the courts will adopt their construction. 2 Kent, Comm. 557; Insurance Co. v. Dutcher, 95 U. S. 269; District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585; Reissner v. Oxley, 80 Ind. 580; Willcuts v. Insurance Co., 81 Ind. 300.

(4) That where a complete oral agreement has been but partially reduced to writing the whole agreement may be proved by parol evidence. Bish. Cont. § 164; Board v. Shipley, 77 Ind. 553, 556; Tomlinson v. Briles, 101 Ind. 538, 1 N. E. 63; Wood v. Williams, 142 Ill. 269, 276, 31 N. E. 681; Ballston Spa Bank v. Marine Bank, 16 Wis. 120; Magill v. Stoddard, 70 Wis. 75, 35 N. W. 346; Chapin v. Dobson, 78 N. Y. 74; Juillard v. Chaffee, 92 N. Y. 529; Schmittler v. Simon, supra; Bradshaw v. Combs, 102 Ill. 428; Lafitte v. Shawcross, 12 Fed. 519.

The last proposition is pertinent only to evidence which was not admitted, and which we have already considered. Conceding the general soundness and relevancy of the other propositions, we find nothing in the letters which passed between these parties which can properly be said to modify the meaning of the terms used in the note. The contention is that the clause in the note which authorized the company to retain all renewal commissions, and apply them to the liquidation of the obligation, should be given the meaning of the clause in the letter of March 16, 1891, where, referring to the unsigned note, which was inclosed in the letter, it is said, "Which, as you will see, we have made payable from your renewal commissions maturing from," etc. That, however, was intended, manifestly, not to put upon the note a construction which would make of it a contract distinctly different from the one evidenced by its terms, but simply to call attention to the provision as it is found in the note for the retention and application of renewal premiums to the discharge of the demand. That this was the intention would be the fair inference if the expression of the letter were unqualified, and it is put beyond doubt by the use of the phrase "as you will see," which means "as you will see by reading the note." With that letter in his hand the plaintiff in error was bound to scrutinize the note, and had no right to execute it on the assumption or supposition that it did not mean what it said. If he was misled by the letter and by statements of the president of the company, so as to be entitled to relief on the ground of mistake, and had sought a correction of the note in order to bring it into conformity with the supposed intention of the parties, a court of equity, on proper application and proof, could have given him relief; but as presented here, in a suit at law, there is in the evidence, and there was offered in evidence, nothing to affect the validity and force of the note as it reads, and the court did right in directing a verdict. The judgment is affirmed, with costs.