## Gilbert Sitter, etc., v. David W. Karraker, Assignee, et al.

1. VOLUNTARY ASSIGNMENT—*When Assignee Would be "Interested Under Statute to Contest a Claim.*—In case of a claimant whose demand is not embraced in the assignor's list of creditors annexed to the assignor's deed of assignment, or in case of a claimant who demands an amount in excess of the amount so listed, the assignee would be "interested," as the statute provides, and it might be his duty in the due course of administration of his trust to except to such claim or demand, and put such claimant to due proof of the validity and extent of his claim or demand.

2. PARTNERSHIP—*Nature of Copartners' Liability Where Partner Uses Trust Funds in His Care.*—If a partner has possession of the funds of others in trust, as where he is executor, guardian, trustee and the like, and improperly uses the trust fund for the benefit of the firm, the nature of the copartner's liability depends on whether they participated in the breach of trust.   If the trustee, without his copartner's knowing that the money is held in trust, uses it to pay debts of the firm or applies it to other partnership uses, the *cestui que trust* does not become a creditor of the firm, and can neither maintain an action against them or prove it against the joint estate in bankruptcy.

3. SAME—*When Payment of Trust Fund by Firm to Partner Who is Trustee Will Exonerate Firm.*—Where an executor, administrator, guardian, trustee and the like, has loaned the trust fund to his firm, with full knowledge on the part of all the partners as to the nature and character of the funds, repayment to such trustee by the firm, at a time when such trustee has lawful right to receive the same, will exonerate the firm and all the individual members thereof, except the trustee himself, who would, of course, remain bound as before.

**Voluntary Assignment.**—Claim.  Appeal from the County Court of Union County; the Hon. MONROE C. CRAWFORD, Judge, presiding. Heard in this court at the August term, 1901.  Affirmed.  Opinion filed March 3, 1902.

H. R. BUCKINGHAM and TAYLOR DODD, attorneys for appellant.

WILLIAM A. SCHWARTZ and W. W. BARR, attorneys for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a claim filed by appellant as administrator *de bonis non* of the estate of Frank McElhannon, deceased, with a petition praying that the same be allowed and made a preferred claim, against the assigned estate of Linnell & Miller, being administered by appellee David W. Karraker, assignee, in the County Court of Union County.  To this claim exceptions were filed by appellee Karraker, as assignee, and by Alice Miller, the administratrix of the partner, Miller, who had died subsequent to the making of the assignment.  Upon final hearing the court rendered judgment against appellant.

On the 19th day of September, 1898, L. T. Linnell and A. J. Miller commenced to transact a banking business under a copartnership agreement, entered into by them a few days prior to that date.  The business was conducted under the firm name of Bank of Cobden.  The active management of the business appears to have been intrusted to Linnell, and a cashier by the name of Strong.  In addition to Linnell's interest in the capital stock of the business, he deposited in the bank on the day the bank commenced to transact business with the public, the sum of $2,366.03, which was entered on the books of the bank to his individual credit. This sum stood subject to be checked out by him as he might desire for his own individual purposes, the same as would be the case of an ordinary depositor.  On November 9, 1898, Linnell was appointed administrator of the estate of Frank McElhannon, and soon thereafter there came into his hands, as such administrator, various sums of

money, aggregating $1,168.66, all of which he deposited in the Bank of Cobden to his individual account and credit, and the same were mingled with the funds of other depositors and the general funds of the bank.    There is no evidence that Miller knew that these deposits were of funds received by Linnell from the estate of McElhannon, or even knew that Linnell was administrator of that estate.    Linnell treated this as a part of his individual account with the bank, and in the management of the business by him and the cashier of the bank it was so treated.    Linnell drew against his deposits, in pursuance of his individual business and concerns, until he had not only drawn it all out, but until he had overdrawn his account to the amount of $12,000, and being thus in debt to the bank in the sum of $12,000, and otherwise heavily indebted, and insolvent, on the 2d day of March, 1899, made an assignment of his individual estate, and on the same day the firm of Linnell & Miller made an assignment.    Both these assignments were made under the voluntary assignment laws of this State. On March 9, 1899, Linnell resigned as administrator of McElhannon's estate, and on the same day appellant was appointed administrator *de bonis non*.    Appellant made claim against the assigned estate of Linnell & Miller for the amount of the funds collected by Linnell as administrator of McElhannon's estate which had been deposited in the Bank of Cobden as above stated, and filed the claim and petition mentioned in the introductory part of this opinion.

Appellant's counsel contend as a ground for reversal, "that the assignee can not file exceptions to a creditor's claim by himself, nor jointly with another; that the defendants (appellees) in this case can not lawfully join in the exceptions filed to this claim."    We are of opinion that this contention is not well founded.    The statute provides, in effect, that any person "interested" as a creditor or "otherwise," may within thirty days after the filing by the assignee of the list of claims which have been presented to him, except to any such claim or demand.    In Hanford Oil Co. et al. v. First National Bank, 126 Ill. 584, it is held, that "the assignee

in cases of voluntary assignments for the benefit of creditors is not the representative of the creditors, but the agent of the assignor." In case of a claimant whose demand is not embraced in the assignor's list of creditors annexed to the assignor's deed of assignment, as was the case with appellees here, or in case of a claimant who demands an amount in excess of the amount so listed, the assignee would be "interested," and it might be his duty, in the due administration of his trust, to except to such claim or demand. and put such claimant to due proof of the validity and extent of his claim or demand. We take it that it goes without argument, that the administrator of the estate of a deceased assignor is, in such case, "interested;" and we can perceive no reason why such interested persons may not lawfully join in such exceptions, as was done in this case.

It is not contended by counsel for appellant, that, in this case, any of the identical money received by Linnell from McElhannon's estate can be traced and identified as being in or having gone to the possession of the assignee of Linnell & Miller, so that it might be restored on the ground that the true owner of identified property is entitled to its possession. They admit that "Linnell put all the assets of said estate coming into his hands as such administrator in said Bank of Cobden, and entered the same in his private account with the bank," and that the same became undistinguishably intermingled with the general moneys and funds of the bank. Their position is, that the money deposited by Linnell in the Bank of Cobden became a trust fund, as to the firm, the Bank of Cobden, and thereby became a lawful claim against the assigned estate of Linnell & Miller, and entitled by reason of its character as such, to be preferred over the claims of the general creditors. This position is not well founded. To the extent that this may be treated as a proceeding at law, as contradistinguished from a proceeding in equity, what we said and held in Karraker, assignee, etc., v. Dora Eddleman, as to novation and assent of all the partners, may be applied to this case, but we recognize that this is essentially a proceeding in equity and

must be determined by the rules and principles that prevail in courts of equity. We do not find any Illinois case, in which the exact questions involved here have been decided, but we are not without authority. The rule is laid down in Bates' Law of Partnership, Vol. 1, Sec. 481, as follows:

"If a partner has possession of the funds of others in trust, as where he is an executor, guardian, trustee, and the like, and improperly uses the trust funds for the benefit of the firm, the nature of the copartner's liability depends on whether they participated in the breach of trust. If the trustee, without his copartner's knowing that the money is held in trust, uses it to pay debts of the firm, or applies it to other partnership uses, or lends it to the firm, or puts it in as capital, the *cestui que trust* does not become a creditor of the firm, and can neither maintain an action against them or prove against the joint estate in bankruptcy. * * * Those partners alone who were cognizant of the misapplication of the trust are chargeable, and hence the ground of liability is that they are joint wrong-doers, and not that they are partners. The knowledge of the guilty partner is not the knowledge of the firm, because it is outside of the firm's business. Nor will the fact that one of the other partners knew and agreed to the improper application of the fund make the firm liable."

To the same effect is the text in Lindley on Partnership, Secs. 311–312. In Sec. 312, Vol. 1, that author says :

"To be liable, the firm must be implicated in the breach of trust, and this it can not be unless all the partners either knew whence the money came, or knew that it did not belong to the partner making use of it. Knowledge on the part of one partner will not affect the others; for the fact to be known, has nothing to do with the business of the firm."

These texts are abundantly supported both in reason and adjudications. The evidence does not prove that the partner, Miller, had any knowledge as to "whence the money came," that Lindell deposited in the partnership bank, nor "that it did not belong to him."

If it could be inferred from the evidence that Miller did have full knowledge, still there could be no liability as to either the firm or Miller, under the undisputed facts of this

case. After this money was deposited by Linnell in the bank of the firm—loaned to the firm, and while he was still administrator and had a right to receive and have the custody of the moneys belonging to the estate of McElhannon, he drew all this money out of the bank, and in fact many thousands of dollars more—overdrew his entire account to the amount of $12,000. The deposit—the loan—was fully paid back to him by the firm, before he resigned as administrator and when he had full power to receive the same. Where an executor, administrator, guardian, trustee, and the like, has loaned the trust funds to his firm, with full knowledge on the part of all the partners as to the nature and character of the funds, re-payment to such trustee by the firm, at a time when such trustee has the lawful right to receive the same, will exonerate the firm, and all the individual members thereof, except the trustee himself, who would, of course, remain bound as before. (Bates' Law of Partnership, Vol. 1, Sec. 487.) The judgment of the County Court of Union County is affirmed.