Campbell *v.* Vining.

of the court directs, in default of payment in ninety days, that the master in chancery sell the premises. "And if the same shall not be redeemed at the expiration of *twelve months* from the date of said sale, the said master in chancery aforesaid shall execute and deliver unto the said purchaser a *deed* for said lands," etc.

KAGAY & THORNTON, and STUART & EDWARDS, for Plaintiffs in Error.

H. CASE, for Defendants in Error.

| 23 | 525 |
| 142 | 281 |

EDMOND CAMPBELL, Plaintiff in Error, *v.* JEFFERSON VINING, surviving obligor of Thomas A. Vanmeter, Defendant in Error.

ERROR TO EDGAR.

Fraud may be replied to the statute of limitations.

Where a party neglects to avail himself of proper information, he cannot complain that fraud is charged against his negligence.

THIS cause was tried before HARLAN, Judge, at October term, 1859, of the Edgar Circuit Court.

See opinion for a statement of the case.

A. GREEN, for Plaintiff in Error.

J. SCHOLFIELD, for Defendant in Error.

BREESE, J.   This is an action of *indebitatus assumpsit*.   The declaration contains the common counts, and an account stated, to which the defendant pleaded the general issue and the statute

of limitations. By agreement, a general replication was considered as filed to this plea, and the plaintiff permitted to give in evidence everything that he might under a special replication, and the defendant was permitted to give in evidence any facts that he might specially rejoin. The cause was submitted to the court, without a jury, who found the issue under the second plea for the defendant. The plaintiff excepted, and has brought the case here by writ of error, relying, principally, as error, upon the finding of the court on the plea of the statute of limitations.

The facts are about these: Edmond Campbell was one of the sureties on certain notes made by John F. Campbell, payable to the order of T. R. Vanmeter and Jefferson Vining, two of which had been assigned by Vanmeter and Vining, and paid to the assignees by the plaintiff, and the other one, there being three in all, to one of the original payees, Vining. Two of the notes, each for $297.50, were payable on the first day of July, 1852, and the other, for $100, payable on the 25th December, 1851, and all dated October 6th, 1851. The plaintiff paid one of the notes for $297.50, in the summer and fall of 1852, to Sutherland, to whom it was assigned by Vanmeter, and the other of the same amount, plaintiff paid Vining himself, in stock, in the same summer and fall. The note first due, for $100, was in the hands of James B. Crawford, and paid to him by the plaintiff in the summer of 1853. The suit was brought the 26th of March, 1859.

*John F. Campbell*, being released from all liability to the plaintiff, was sworn as a witness, and testified that he was the principal on said notes; that his father, Edmond Campbell, and Samuel Vance, signed them as his securities. That the notes were given for a lot of sheep, purchased by him of said Vanmeter and Vining. That after their execution, and before their maturity, he was preparing to go to California, and that he paid off all three of the notes in the city of Chicago, to Vanmeter. That Vanmeter did not have the notes present when witness paid them, but told him they were left as collateral security with a broker in Chicago, and that he, Vanmeter, would get them and give them up, or destroy them. That he took receipts for their payment, but subsequently lost them in traveling through the State of Texas, but had a memorandum book on which he made the entries at the time, reference to which refreshed his recollection of the matter. That the securities, Edmond Campbell and Vance, lived in Edgar county, and knew nothing of their payment. That he never saw said securities after he paid the notes, nor did he inform them of said payment. Relied on the promise of Vanmeter to give up or destroy the notes. Witness then left for California, but stopped in Texas,

and remained there until the spring of 1858, when he returned to Edgar county, Illinois. Never informed his securities of the payment of said notes, until he returned, in March, 1858.

It was admitted that letters of administration had been taken out in Kankakee county, Illinois, on the estate of Thomas Vanmeter, deceased; that a day for adjustment of claims against the estate was appointed, according to law, and that plaintiff's claim was not presented, and that the estate was solvent.

It is insisted here, and the only question presented is, whether, under these facts, the plaintiff's right of action is barred by the statute of limitations. It is urged that the collection of the notes from the securities, after they had been paid by the principal, was a fraud upon them, or if they were collected through mistake, in either case, the plaintiff, the security who paid them, has a right to recover the amount, with interest from the time of payment, under the count for money paid for the use of the defendant, and that in case of fraud or mistake, the statute of limitations does not commence to run until the discovery of the fraud or mistake, and that it is not necessary to allege or show that the plaintiff was prevented from discovering the fraud or mistake by the acts of the defendant.

It is urged, on the other hand, that fraud cannot be replied, in a court of law, to the plea of the statute of limitations. Various authorities are cited in support of the several propositions insisted upon. We will consider the case, under the agreement of counsel, as if there was a special replication setting up the fraud, and that plaintiff did not discover it until within five years before action brought and this replication demurred to. The leading case for the plaintiff is *Sherwood* v. *Sutton*, 5 Mason's U. S. Cir. C. R. 143, in which Justice Story reviews the English and American cases on the point, and concludes, as there was no court of equity in New Hampshire where the case arose and was tried, that it was good policy to strain the statute by construction, to make fraud an exception, when the statute itself had not made it an exception.

All the cases cited by Justice Story take the ground, that there must be evidence of some fraud practiced by the defendant, in order to prevent the plaintiff from obtaining knowledge of that which had been done. In one of the cases he refers to, *Granger* v. *George*, (11 Eng. C. L. R. 406,) which was trover for the non-delivery of certain deeds, the statute of limitations was pleaded, and the general replication, that the action did accrue within six years. Upon the trial there was no proof that the plaintiff knew of the conversion until within the six years, although it had taken place long before. Abbott, Ch. J., said, " that the statute began to run from the time of the act

done by the defendant, although the plaintiff had not any notice of it; there not being evidence of any fraud practiced by the defendant in order to prevent the plaintiff from obtaining knowledge of that which had been done. The plaintiff was certainly guilty of laches in not making inquiries respecting the property at an earlier period, and has no ground of complaint that he is not now entitled to recover." Bayley, J., concurred, and referred to the cases of *Short* v. *McCarthy,* (5 Eng. C. L. R. 403,) and *Brown* v. *Howard,* 6 ib. 43. The case of *Short* v. *McCarthy* was in assumpsit, and the breach averred that the defendant did not diligently and sufficiently make a search at the Bank of England to ascertain whether certain stock was standing in the name of certain persons, the defendant having been employed as an attorney so to do. To the declaration, the statute of limitations was pleaded, and it appeared on the trial that the omission to search took place more than six years before action brought, although it was not discovered by the plaintiff till within the six years. Abbott, Ch. J., directed a non-suit to be entered, and Bayley, J., said, " on these pleadings I am of opinion that the plaintiff is not entitled to recover. All these facts existed above six years before the action was commenced. The defendant's promise, his negligence, the payment of the money by the plaintiff, in short, the whole cause of action, existed above six years ago. Mr. Tindall's (plaintiff's counsel) argument is this, that as the plaintiff did not know the injury he had sustained till within the six years, the cause of action had not accrued; but I think the cause of action accrued from the time the breach took place." Of this opinion was Holroyd, J., also.

In *Brown* v. *Howard,* which was assumpsit for breach of an implied contract to provide good security, the defendant pleaded the general issue and the statute of limitations. It was shown on the trial that the defendant, when he took the security, knew it was void, when he purchased it. The court held that the action proceeding on the contract and not on the fraud, the statute of limitations was a good bar. Dallas, Ch. J., said, the gist of the action is not fraud, but a contract or promise declared on in assumpsit. Park, J., declared himself of the same opinion, although a case of such hardship on the plaintiff, the court would, if it were possible, get out of the course of decisions. But they cannot set aside the express words of the statute, or the decisions which seem exactly in point. What are the words of the statute? " All actions of account and upon the case shall be commenced within six years next after the cause of such action or suit, and not after." The strong case is, *Short* v. *McCarthy,* (5 Eng. C. L. R. 403,) lately decided

in the King's Bench. That case is the same as the case before the court. And of this opinion were the other judges, Burrough and Richardson.

The courts in Massachusetts, (*Turnpike Co.* v. *Field*, 3 Mass. 201; *Homer* v. *Fisk*, 1 Pick. 435; *Wells* v. *Fish*, 3 ib. 74), and in Georgia, (*Conyers* v. *Kenans*, 4 Georgia, 308; *Parsons* v. *Jones*, 12 ib. 371), and in Pennsylvania, (*Pennock* v. *Freeman*, 1 Watts, 401), hold the doctrine, that as against a right of action, dependent on the existence of a secret fraud, the statute of limitations runs only from the period of the discovery of the fraud. In all those cases, the courts bend the statute of limitations to include cases not within its operation, as those States have no chancery courts. They all refer to the *dictum* of Lord Mansfield, in the case of *Bree* v. *Holbeck*, Douglass, 656. That case was assumpsit for £2,000, had and received. The defendant pleaded the statute of limitations. The plaintiff replied, that Holbeck, holding a mortgage made to his intestate, and which was found among his papers, sold it to the plaintiff, falsely affirming the mortgage to be good; when, in fact, there was no such mortgage, it having been a forgery by the intestate, and that the action was brought within six years from the time of the discovery of the fraud. To this replication there was a demurrer and joinder. Lord Mansfield, in delivering the opinion of the court, said: "There *may* be many cases where the assertion of a false fact, though unknown to be false to the party making the assertion, will be fraudulent. There may be cases, too, which fraud will take out of the statute of limitations. But here, everything alleged in the replication may be true, without any fraud on the part of the defendant. He is an administrator, etc. If he had discovered the forgery, and had then got rid of the deed as a true security, the case would have been very different." The defendant had judgment.

It is very clear, this eminent judge does not say, in this case, or lay down the general doctrine, that fraud may, in all cases, be replied to a plea of the statute of limitations, as the courts before referred to have done, and on the strength of this *dictum*. His Lordship merely says, "there *may* be cases," without specifying them.

Subsequent rulings by the British courts establish a different doctrine, as appears from the cases we have adverted to—*Short* v. *Mc Carthy* and *Brown* v. *Howard*. These cases are directly on the point.

So in New York, in the case of *Troup* v. *Smith*, 20 Johns. 46, Spencer, Ch. J., in commenting on the case of the *Turnpike Co.* v. *Field*, 3 Mass. 201, and the cases of *Bree* v. *Holbeck*, and *South Sea Co.* v. *Wymoredsell*, 3 P. Wms. 143,

34

says: "We cannot, however, yield the conviction of our own minds to decisions evidently borrowed from the courts of equity, and which never have been sanctioned in the courts of law in that country from which our jurisprudence is derived. It has been already observed that the *dictum* of Lord Mansfield, in *Bree* v. *Holbeck,* is the only instance in which such a position was ever advanced in Westminster Hall; and when it is further considered that his Lordship had an inclination to intrench on courts of equity, that mere *dictum* cannot be regarded as authority. There is a marked and manifest distinction between a plea of the statute of limitations, in a court of law and in a court of equity. Courts of equity not being bound by the statute, any farther than they have seen fit to adopt its provisions as a reasonable rule, and then only in analogy to the doctrines of that court, are perfectly right in saying that a party cannot, in good conscience, avail himself of the statute, when, by his own fraud, he has prevented the other party from coming to a knowledge of his rights until within six years prior to the commencement of the suit. But courts of law are expressly bound by the statute — it relates to specified actions; and it declares that such actions shall be commenced and sued within six years next after the cause of such actions accrued, and not after; thus, not only affirmatively declaring within what time these actions are to be brought, but inhibiting their being brought after that period."

To the same effect is the case of *Leonard* v. *Pitney,* 5 Wend. 31, in which Justice Marcy, in giving the opinion of the court, refers to the case of *Troup* v. *Smith* and *Granger* v. *George,* 5 Barn. & Creswell, 149, reported in 11 Eng. C. L. R. 406.

In the case of *S. and M. Allen* v. *Mille,* 17 Wend. 202, Ch. Jus. Nelson held, that it was no answer to a plea of the statute of limitations, that the cause of action was fraudulently concealed by the defendant, until after the statute had attached, and that the suit was brought within the time limited by the statute after the discovery of the right to sue.

In *Smith* v. *Bishop,* 9 Vermont, 116, Phelps, J., than whom but few courts could boast a more enlightened judge, delivering a very able opinion for the court, says: "We are of opinion, that when the cause of action is perfected and the statute of limitations has subsequently run, the action is barred, although the party may have been ignorant of his cause of action, and that ignorance may have resulted from the character of the original fraud, or the manner in which it may have been perpetrated. We are by no means sure that this is not the most equitable doctrine. The object of the statute is to put a perpetual seal upon stale controversies, and to prohibit their agitation

at a period when the usual means of eliciting truth are not at hand, but are removed forever—when right cannot be ascertained, and justice must be administered at random. If we make the protection of the statute to depend upon the plaintiff's knowledge of his injury, we require the defendant to perpetuate the evidence of that knowledge during all time; and we expose him, when this and other evidence necessary for his defense shall have passed from him, to fresh litigation, with no other guide to correct adjudication than the shreds of evidence, which accident, or a subtle and more sagacious adversary, may have preserved.    If we could engraft such a provision upon the statute, we should destroy its practical utility and defeat its great purpose."

In Virginia, the same doctrine is held.    *Collis* v. *Waddy*, 2 Munford, 511.

So in North Carolina, in the case of *Hamilton* v. *Shepperd*, 3 Murphy, 115, the court say : " The cause of action accrued when the fraud was committed; three years having run from that time, before the bringing the suit, the plaintiff is barred ; for he is not within any of the savings of the statute."    And to the same effect is the case of *Thompson and Wife* v. *Blair et al.*, ib. 583.

In South Carolina, in *Miles* v. *Berry*, 1 Hill, 191, where the defendant, the maker of a note, secretly and fraudulently obtained possession of the note, and kept it until the statute of limitations had run out, the plaintiff, on discovering the fraud, and that the defendant had possession, brought assumpsit as on a lost note, to recover the amount ; it was held, "that the statute was a bar to the action, notwithstanding the fraud, and although the plaintiff did not know where the note was.    The plaintiff's action was on the note, not on the fraud ; his cause of action is, that the money which the defendant, on a day certain, promised to pay him, is not paid.    His right to demand payment arose on the day on which the note fell due ; this is his cause of action."

In Kentucky, the distinction is clearly stated in the case of *Pyle* v. *Beckwith*, 1 J. J. Marshall, 445, where the court say : " The suit being for the fraud, and not for a warranty, the cause of action accrued on the sale, and the limitation commenced running as soon as the fraud was committed.    The rule is otherwise in equity.    There the limitation takes date from the *discovery* of the fraud."

The cases, favorable to the plaintiff, proceed upon the ground of such a fraudulent concealment, on the part of the defendant, as to prevent the plaintiff from asserting his right, and that the defendant had practiced fraud in order to prevent the plaintiff from obtaining that knowledge at an earlier period, and, it would seem, are in disregard of the provisions of the statute of limita-

tions, for fraud is not a saving or exception in it. Our statute of limitations directs that the action of assumpsit shall be brought within five years next after the cause of action has accrued, and not thereafter. The plaintiff's cause of action, in this case, accrued in the summer or fall of 1852, as to the two notes for $297.50, and in the summer or fall of 1853, as to the note for one hundred dollars ; and in regard to this note, he was fully informed, in March, 1858, on the return of the principal, John F. Campbell, of the fact that he had paid it, or might so have been informed by him, and in time to save the operation of the statute—the limitation not expiring, as to this note, until some months thereafter.

The statute barring a recovery in such case, we have no dispensing power over, but must enforce it.

But it may be inquired, what fraud is shown by the defendant, in this case ? He surely is not chargeable with any, for, if the witness is to be believed, he paid the notes to Vanmeter, and there is no evidence that Vining knew that fact. A fraudulent concealment by Vanmeter, of a fact unknown to Vining, should not prejudice him. All the fraud which is disclosed, lies at the foundation of the action, and originated with Vanmeter, and he is not shown to have practiced any arts, or resorted to any devices to prevent the plaintiff, after his cause of action had accrued, from discovering such cause of action. As to the small note, he knew it in time to bring his action. Vanmeter was dead when this action was brought, and, thereby, one of the means of eliciting truth was removed forever. He was not present to confront the witness.

But Vining does not stand in the same situation that Vanmeter would, if alive, and a party to this suit, instead of Vining. The latter is but a co-obligor in the notes. He had no reason to know or believe they were paid ; he found them unpaid in the hands of a broker in Chicago, deposited there, as collateral security, by Vanmeter. Their payment, if paid, was made at Chicago, Vining living in a distant county. So far as we can gather from the record, there were but two persons to whom the payment was known—Vanmeter, and John F. Campbell. It is shown, that Vanmeter died soon after the time of the alleged payment, and there is no intimation, or suggestion, that he ever communicated the fact to Vining—Campbell himself left the country. What was the position of the parties to this suit then, with regard to the means of obtaining knowledge of the payment of the notes ?

John F. Campbell was the principal in the notes, the son of the plaintiff, and, it may well be presumed, they were in correspondence. No one was more interested than the plaintiff, to

know why these notes had not been paid, and how easy was it for him to make the inquiry by letter, of his son, in 1852, when payment was demanded of him? The notes being in the hands of the broker, was sufficient evidence to Vining that they had not been paid. If there be culpability in failing to make an early discovery of the payment of the notes, it must attach to the plaintiff.

There is not the shadow of proof that the defendant practiced any fraud whatever, or any device, to prevent the plaintiff from obtaining knowledge of the payment of the notes, before he paid them himself. He did nothing and said nothing to delay or prevent the plaintiff from obtaining a knowledge of his rights, and which could, and should have come, very naturally, from his son, the principal in the notes. · If there has been any concealment since the death of Vanmeter, of which the plaintiff can complain, it is by his son, and not by Vining. With the slightest vigilance, the plaintiff, in 1852, could have obtained all the necessary knowledge before the bar of the statute. As to the small note, he could have saved the bar. He has certainly been guilty of great laches. Fraudulent concealment may consist in the fraud connected with, or constituting the cause of action, or it may consist in acts subsequent, designed to conceal a cause of action originating without fraud. Vining is chargeable with neither; even fraud could be set up against the statute of limitations. The judgment of the Circuit Court is affirmed.

CATON, C. J. I think fraud may be replied to the statute of limitations.

WALKER, J. I concur with the Chief Justice in his view of this question.

*Judgment affirmed.*