142   269
59a   352

SAMUEL D. WOOD

*v.*

ROBERT E. WILLIAMS *et al.*

*Filed at Springfield June 17, 1892.*

1. LIMITATIONS—CONTRACT—*whether a letter written constitutes an "evidence of indebtedness in writing"—rule of limitation applied.* A party who had agreed to invest the money of the plaintiff in a loan on real estate, wrote to the plaintiff's agent that he had drawn papers for a loan of $2500, to be secured on one hundred and sixty acres of land, valued at $6400; that he had made papers payable to the plaintiff, and the loan bore seven per cent annual interest, payable July 1, each year; that as the borrower paid no commissions, and, as agreed with the agent, the plaintiff would receive six and one-half per cent interest net to him, and that the other one-half of one per cent when interest was paid would come to him, the defendant, for trouble and expense, and that the title was all right, and the security was ample, and asking the money to be sent: *Held,* that the letter did not purport to be a statement of a contract in writing previously made, nor profess to be, of itself, the contemporaneous evidence of a contract then being made, and was not such an evidence of indebtedness in writing as required by the Statute of Limitations.

2. Such letter could not, in any view, be evidence of a contract previously made, unless accompanied with parol evidence supplementing its omissions, and then, in legal estimation, the contract would be a verbal contract, which the statute bars in five years after the cause of action accrues.

3. SAME — *avoiding bar by charge of fraudulently concealing the facts.* A defendant who had agreed with the plaintiff to safely invest $2500 for the latter on good real estate security, gave the money to his agent in soliciting and making loans, to be loaned by him. Defendant's agent used the money and returned forged notes, purporting to be secured by a forged mortgage, which was taken by the defendant and returned to the plaintiff, neither of the latter having notice of the fraud of the agent. The agent paid the interest on the notes as the same fell due, up to the maturity of the forged note, when he absconded, before which time defendant had no knowledge of the forgery. Thereupon the plaintiff sued the defendant on the verbal contract to loan, and the latter pleaded the Statute of Limitations of five years, and the former replied that defendant fraudulently concealed the facts. No negligence of the defendant was charged in failing to control or super-

vise the acts of his agent or in failing to discover his fraud : *Held,* that the replication was insufficient, and that the plaintiff could not recover.

4. Persons relying upon exceptions in a general statute must clearly show that their case is within them. Therefore the *onus* is upon the party replying fraudulent concealment of the right of action, to show that the defendant can fraudulently conceal without some affirmative act, or some act of negligence so gross as to be equivalent to intentional fraud.

5. A defendant can not be guilty of affirmative fraudulent concealment of a matter of the existence of which he himself has no knowledge. If the defendant is chargeable with the fraudulent act of one employed by him to make and secure a loan, his liability can not be extended to the agent's subsequent fraudulent conduct.

6. The fraudulent concealment of a cause of action, to avoid the limitation of the action, must be that of the party sought to be charged, and a mere allegation or proof that it was the act of his agent will not be sufficient, unless he is in some way shown to have been instrumental in or cognizant of the fraud.

7. Same—*the words "other evidence of indebtedness in writing," in section 16 of the Limitation act, construed.* The words "other evidence of indebtedness in writing," in section 16 of the Limitation law, by a familiar rule of construction do not extend to a different class than those included by the preceding particular enumeration, and were intended to include only contracts whereby the parties intended to put the evidence in writing at the time they were made, and hence can have no application to verbal contracts sought to be proved by subsequent admissions in writing.

Appeal from the Appellate Court for the Third District ;—heard in that court on appeal from the Circuit Court of McLean county ; the Hon. Owen T. Reeves, Judge, presiding.

Messrs. Rayburne & Barry, for the appellant:

A contract in writing is any proposition to do a thing, the terms of which, or the thing to be done, can be determined from writings between the parties to the transaction. *Cox* v. *Campbell,* 157 Mass. 336 ; *Bank of Owenboro* v. *Western Bank,* 13 Bush, 526 ; *Bradstreet* v. *Everson,* 72 Pa. St. 124 ; *Ridell* v. *Hoffmann,* 3 Pa. 224 ; *Cox* v. *Livingston,* 2 W. & S. 103 ; *Lewis* v. *Peck,* 10 Ala. 142 ; *Pollard* v. *Rowland,* 2 Blackf. 22.

A written contract signed by only one of the parties thereto,. but accepted and acted upon by the other, is the contract of both parties, and subject to all of the incidents of written contracts, and consequently can not be varied by parol. *Ames* v. *Moir*, 130 Ill. 582; *Plumb* v. *Campbell*, 129 id. 101; *Abrams* v. *Pomeroy*, 13 id. 133; *Hoode* v. *Hyde*, 61 Wis. 204; Leake on Law of Contracts, 183, 184.

The contract appears to have been fully executed or performed on the part of the plaintiff. In such cases mutuality in its obligations would be immaterial. *Mills* v. *Blockall*, 62 E. C. L. 358; *Plumb* v. *Campbell*, 129 Ill. 101.

The ten years' limitation applies to actions founded on executory contracts in writing of this character, signed only by the defendant, and to cases where it requires proof not appearing upon the face of the paper sued on, to make a cause of action. *Railroad Co.* v. *Johnson*, 34 Ill. 389; *Ames* v. *Moir*, 130 id. 582; *Plumb* v. *Campbell, supra; Dunning* v. *Price*, 56 id. 388; *Wing* v. *Evans*, 73 Iowa, 409; *Prenatt* v. *Runyan*, 12 Ind. 174; *Falworth Co.* v. *Shawhan*, 107 id. 47; *Jassoy* v. *Horn*, 64 Ill. 379; *Freer* v. *Lake*, 115 id. 662; *Memory* v. *Niepert*, 131 id. 627.

Were the defendants exonerated by Fursman's fraudulent act? The principal is liable civilly for the fraudulent or criminal acts of his agent, whenever such acts are committed by the agent while pursuing the business of his employment. *Barnard* v. *Coffin*, 141 Mass. 37.

The principal is liable for the frauds, deceits, concealments,. misrepresentations, torts, negligences and other malfeasances or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify, or participate in, or indeed know, of such misconduct. Story on Agency, sec. 452; Mechem on Agency, sec, 739; *Barnard* v. *Coffin*, 141 Mass. 37; *Appleton Bank* v. *McGilvray*, 4 Gray, 518; *Pownall* v. *Bair*, 78 Pa. St. 403;.

*Darling* v. *Stanwood,* 14 Allen, 504; *Campbell* v. *Reeves,* 3 Head, 226.

Where the principal owes to a third person the performance of some duty, as to do or not to do a particular thing, and he commits the performance of his duty to an agent, the principal can not escape responsibility if the agent fails to perform it, whether such failure be accidental or willful, or whether it be the result of negligence or malice. Mechem on Agency, sec. 740.

In the execution of his authority the agent represents the principal. While so acting, the agent's act is the act of the principal, and whatever injuries may result to a person, from the manner in which the act is performed, are properly attributable to the principal. The injuries may be the result of some act of commission or of omission on the part of the agent, but in either event they have come to the third person, because the agent, whom the principal set in motion, has neglected some duty which the circumstances imposed upon him. Mechem on Agency, sec. 732; *Maple* v. *Railroad Co.* 40 Ohio St. 313; *Hern* v. *Nichols,* 1 Salk. 289; *Frank* v. *Lanier,* 91 N. Y. 112; *Allen* v. *Hart,* 72 Ill. 103; *Allin* v. *Millison,* 72 id. 102.

It is a general rule of law, that in the absence of any authority, either express or implied, to employ a sub-agent, the trust committed to the agent is presumed to be personal, and can not be delegated by him to another, so as to affect the rights of the principal. *Hunt* v. *Douglas,* 22 Vt. 128; *Barrett* v. *Rhem,* 6 Bush, 466; *Titus* v. *Railroad Co.* 46 N. J. L. 393; *Brewster* v. *Hobart,* 15 Pick. 302; Mechem on Agency, 185.

It being a conclusion of law that what Fursman did in this transaction was the act of the defendants, it must follow that defendants come within section 22 of the Statute of Limitations. *Beatty* v. *Nickerson,* 73 Ill. 605; *Bartelott* v. *Bank,* 14 Ill. App. 163.

Mr. John M. Scott, and Mr. Charles L. Capen, for the appellees:

The fraudulent concealment of a cause of action, under section 22 of the Limitation act, must be that of the party sought to be charged, and a mere allegation or proof that it was the act of his agent will not be sufficient, unless he is in some way shown to have been instrumental in or cognizant of the fraud. Wood on Limitations, sec. 276; *Stevenson* v. *Robinson*, 39 Mich. 160.

In general, although a principal may be responsible for the deliberate fraud of his agent in the execution of his employment, he is not responsible for his criminal acts unless he expressly commanded them. Parsons on Mercantile Law, 154.

A master is answerable for damage occasioned by his servant's negligence in doing a lawful act in the course of his service, but not so if the act is in itself unlawful, and is not proved to have been authorized by the master. *Lyon* v. *Martin*, 8 A. & E. 512.

A principal who employs an agent to do a legal thing is not liable in damages for any illegal act of the agent done in the execution of the mandate, to which the principal was not accessory or privy. *Richon* v. *Mayer*, 29 La. Ann. 828.

A principal is not liable to a *qui tam* action for the authorized act of an agent when he is ignorant thereof and not personally negligent. *Schreiber* v. *Sharpless*, 14 Phil. 581.

Under ordinary circumstances the authority of the agent is limited to that which is lawful. If, in seeking to carry out the purpose of his employment, he oversteps the law, he outruns his authority, and his principal will not be bound by what he does. Smith on Master and Servant, *344.

The principal is responsible for the negligent, but not, in general, for the criminal, conduct of his agent. *Mitchell* v. *Mimis*, 8 Texas, 6.

If the act contracted to be done may be done in a lawful manner, the employer, as we have seen, is not responsible if

it is done in an unlawful manner. Smith on Master and Servant, *356.

A principal is not bound for the criminal acts of his agent unless he participates in them, or has been guilty of gross negligence. Smith on Master and Servant, 286.

Where a party deposited bonds with a bank for safe keeping, and they were stolen by the cashier, the bank was held not liable. *Sturges* v. *Keith,* 57 Ill. 451; Story on Bailments, sec. 88; *Foster* v. *Essex Bank,* 17 Mass. 479; *Finacure* v. *Small,* 1 Esp. 315.

A principal is answerable when he has received a benefit from the fraud of his agent, acting within the scope of his authority. *Mackey* v. *Bank,* L. R. 5 P. C. 410.

In the whole series of cases from *Hern* v. *Nichols,* 1 Salk. 288, downwards, both elements which go to make up the principal's liability were present, *i. e.* the fraud was committed by an agent in the course of his duty, and it was committed for the benefit of his principal in the usual course of business. *Weir* v. *Barnett,* 3 Ex. Div. 42.

As a general rule, one agent is not responsible as a principal for the act of another agent, unless the former does something which makes him a principal in the fraud. *Cargill* v. *Bower,* 47 L. J. Ch. 649; 38 L. T. 779; *Weir* v. *Bell,* 3 Ex. Div. 538.

The tendency of the courts is not to extend the liability of a principal for fraud which he has not committed himself.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Two questions are presented by the arguments made in this case: First, is the letter set out in the third count of appellant's declaration a contract or instrument in writing, within the meaning of section 16 of the Statute of Limitations; and second, is the replication of the fraudulent concealment of the cause of action, as pleaded, an answer to the plea of the Statute of Limitations? Both were answered in the negative by

the courts below, and in our opinion they were correctly so answered.

*First*—Section 16 of the Statute of Limitations is: "Actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within ten years next after after the cause of action accrued." The words "other evidences of indebtedness in writing," by a familiar rule of construction, do not extend to a different class than that included by the preceding particular enumeration, (Potter's Dwarris on Statutes, 275; Sedgwick on Stat. Construction, 423,) and can therefore have been intended to include only contracts whereof the parties intended to put the evidence in writing at the time they were made, and hence can have no application to verbal contracts sought to be proved by subsequent admissions in writing.

The letter set out in the third count of appellant's declaration is as follows:

"Bloomington, Ill., *July 17, 1882.*

"*Mr. Milner Brown, Delavan, Ill.:*

"Dear Sir—We have to-day drawn papers for a loan of $2500, to be secured on one hundred and sixty acres of improved farm land in Livingston county, valued at $6400. The security is ample. We made the papers payable to Samuel D. Wood, and the loans bear seven per cent annual interest, payable July 1, each year. We get no commission from the borrower, and as agreed with you, Mr. Wood will receive six and one-half per cent interest net to him, and the other one-half of one per cent per annum, when interest is paid, comes to us, for our trouble and expense in the matter. The title is all right, and the papers will be back here in a day or two, and if convenient you may send us the amount on the receipt of this, and oblige,

"Yours truly, Williams & Burr, (*A. B.*)"

It is very clear that this does not purport to be the statement of a contract in writing previously made, nor does it profess

to be itself the contemporaneous expression of a contract then being made. It assumes that a contract has been previously made, and it is a narrative of what has been done, under such a contract. It assumes a previously understood relation between appellant and Brown, to whom the letter is addressed, and it expressly says there was a previous agreement between Brown and appellees, and it assumes that by that agreement the time for which the loan was to run was fixed, and also that it was thereby determined by whom the expenses incidental to the performing of the contract were to be borne, and by whom the interest to become due on the loan was to be collected, for these were indispensable to making the loan, and they are not alluded to in the letter. The only thing that remained to be done by appellees (and that that even remained to be done is inference only,) was the delivery of the note and mortgage to appellant. It is therefore impossible that the letter could have been intended to be the evidence of a contemporaneous contract, and in no view could it be evidence of a contract previously made, unless accompanied with parol evidence supplementing its omissions; but then, in legal estimation, the contract would be a verbal contract. Bishop on Contracts, sec. 164, and cases cited.

The cases cited by appellant are not analogous. In *Barney* v. *Forbes*, 118 N. Y. 580, there were express present undertakings of the parties, fully set out in the letters. In *Bank of Owensboro* v. *Western Bank*, 13 Bush, 526, there was, first, a request in writing, by the cashier of the appellant bank, addressed to the cashier of the appellee bank, that the latter bank would invest "some means" for it "in good paper, at thirty, sixty, ninety or one hundred days' time." Then there was the reply of the cashier of the appellee bank that he had on that day invested as requested, followed by subsequent explanations by letter, and so the writings clearly evidenced the beginning and each successive step in a finally consummated contract. In *Bradstreet* v. *Everson*, 72 Pa. St. 124, the writing

expressly acknowledged the receipt, for collection, of the acceptances, and this amounted in legal effect, to an undertaking to collect. In *Critzer* v. *McConnel*, 15 Ill: 172, the receipt stated that "Bonesteel had received the money of McConnel for the purpose of being used to purchase for him, and in his name, a certain judgment specified, and in the receipt Bonesteel agreed to procure a transfer of the judgment to McConnel in ten days or to return the money, the judgment to be by McConnel transferred to Bonesteel, at any time within oné year, upon his paying him $336 therefor," and thus it was the complete statement of a present undertaking. In *Riddle* v. *Hoffman*, 3 Pa. 224, the receipt contained an express undertaking of the party signing it, to collect.

In *Ames* v. *Moir*, 130 Ill. 582, *Plumb* v. *Campbell*, 129 id. 101, *Illinois Central Railroad Co.* v. *Johnson*, 34 id. 389, *Dunning* v. *Price*, 56 id. 338, *Abrams* v. *Pomeroy*, 13 id. 133, *McCloskey* v. *McCormick*, 37 id. 66, and *Memory* v. *Niepert*, 131 id. 623, cited by counsel for appellant, there were distinct present undertakings expressed in the instruments in question, and no case has been cited that is analogous to the present case, and we do not believe that any well considered case can be found where a writing like this letter, has been held, of itself, alone, to be sufficient evidence of a "written contract," or sufficient "evidence of indebtedness in writing," as those words are employed in our statute, *supra.*

*Second*—The replication to the plea of the Statute of Limitations is as follows, omitting formal beginning:

"Because he says that the several causes of action, and each and all of them, were fraudulently concealed by the defendants from the knowledge of the plaintiff until within five years before the commencement of this suit; that said defendants, as agents of the plaintiff, accepted and undertook to loan $2500 for plaintiff, to be secured on one hundred and sixty acres of improved farm land in Livingston county, Ill., valued at $6400; that the security should be ample, and the title all

right; that the defendants, in consideration of the annual pay-
ment to them by plaintiff of one-half of one per cent on said
$2500 during continuance of the loan, undertook to make
said loan on the security aforesaid, to look after and care for
the same, to collect the annual coupons of the borrower each
year as they fell due; that defendants did not loan said money,
but without the knowledge or consent of the plaintiff gave said
$2500 to Woodrow & Fursman, who were defendants' agents
in soliciting and making loans; that Fursman, acting in the
place of said defendants, as their agent, without the knowledge
of the plaintiff, took said $2500 given him by defendants,
and turned over to defendants certain papers purporting to
be the note of Patrick Carey for $2500, seven per cent interest,
dated July 15, 1882, due July 1, 1887, payable to plaintiff,
and of the mortgage purporting to have been executed by Carey
and wife to secure said note on the south-east quarter of sec-
tion 1, township 29, north, range 7, east of the third principal
meridian, in Livingston county, Ill.; that said papers were
not the note and mortgage of said Carey and wife, but were
false, fraudulent and forged, and had been forged by said
Fursman while representing the defendants; that defendants
afterwards delivered, through his agent, to the plaintiff, the
forged note and mortgage, and then and there falsely stated
and represented to the plaintiff that they had loaned said
$2500 to Patrick Carey, and the note was the note of Patrick
Carey for $2500, due July 1, 1887, and said defendants falsely
stated and represented to the plaintiff, that another paper
which they had at the same time delivered to the plaintiff was
the application of the said Patrick Carey for said $2,500;
that defendants stated that they would send the mortgage as
soon as the record would be completed; that on September 4,
1882, they delivered to the plaintiff a false, fraudulent and
forged mortgage, and falsely stated and represented to plaintiff
that it was the mortgage of Patrick Carey and wife to plaintiff,
and that they had just received the same from the recorder's

office; that the defendants, in July, 1883, paid to the plaintiff a sum of money equal to the amount of interest that defendants were to collect for plaintiff, and took up the interest coupon, thereby falsely representing that they had collected the interest of said Patrick Carey; that the defendants, in July, 1884, and on or about July 1 of each year thereafter, up to the year 1889, paid to the plaintiff a sum of money equal to the amount of interest defendants were to collect for plaintiff on the sum to be loaned, as aforesaid, and upon which payment defendants took up the interest coupon, thereby falsely representing that they had collected it from said Patrick Carey; that plaintiff, believing the statements and representations of the defendants to be true, and relying and acting on said statements as true, made no examination to discover whether said statements and representations were true or false, and did not discover that defendants had not loaned said money, $2500, as they had undertaken, until November 1, 1889, when he learned for the first time that the said papers were false, fraudulent and forged, it being soon after Fursman had disappeared; that because of the relation existing between the plaintiff and the defendants, the plaintiff could not, by reasonable diligence, discover that any or either of the said causes of action existed in his favor against said defendants before the time he made the discovery aforesaid."

It will be observed that there is no averment here that appellees knew, before 1889, that the note and mortgage were forged, or that the money which they paid to appellant as interest upon the loan was paid out of their own means, or that it was not paid to them as interest upon the loan by Fursman or some one else, and believed by them to have been paid as interest on the loan by the borrower. The question raised by the replication is therefore shortly stated, this: Are appellees guilty of concealing knowledge of the cause of action, within the meaning of our Statute of Limitations, by reason of the fact, simply, that Fursman concealed knowledge of his fraud,

—in other words, is his concealment of such knowledge their concealment of it.

Section 22 of the Statute of Limitations is: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

Persons relying upon exceptions in a general statute must clearly show that their case is within them, and the *onus* is therefore upon appellant to show that a party can fraudulently conceal without some affirmative fraudulent act, or some act of negligence so gross as to be equivalent to intentional fraud. How appellees can be guilty of affirmative fraudulent concealment of a matter of the existence of which they themselves had no knowledge, we are unable to comprehend. If it be conceded that appellees are chargeable with the fraud of Fursman in failing to make and secure the loan, the agency is not shown to have extended beyond making and securing the loan, and no theory of the law extends it to his subsequent fraudulent conduct. The rule is, the principal is responsible for the agent's acts, though unauthorized, within the limits and in the execution of the agency, though yet not beyond these. (Bishop on Contracts, sec. 1112.) And so we have held that the master is not liable for the wilful or malicious torts of the servants unless they are in furtherance of the business of the master, or are subsequently ratified by him. *Johnson* v. *Barber*, 5 Gilm. 425; *Tuller* v. *Voght*, 13 Ill. 277; *Oxford* v. *Peter*, 28 id. 434.

No negligence of appellees is set up in failing to control or supervise the acts of Fursman, or in failing to discover his fraud. It is said in Wood on Limitations, (sec. 276,) "the fraudulent concealment must have been that of the party sought to be charged, and a mere allegation or proof that it was the act of his agent will not be sufficient, unless he is in

some way shown to have been instrumental in or cognizant of the fraud,"—and so it is expressly ruled by the Supreme Court of Michigan, in *Stevenson* v. *Robinson,* 39 Mich. 160, and such, also, is the effect of the ruling of this court in *Campbell* v. *Vining,* 23 Ill. 525, which was decided before the enactment of section 22 of the Statute of Limitations, *supra,* on common law principles. A majority of the court there held, that at common law fraud might be replied to a plea of the Statute of Limitations in an action at law, from which Mr. Justice BREESE dissented; but the whole court held that Vining was not affected by the fraudulent conduct of his co-payee in the promissory notes in controversy, in concealing knowledge of their payment. .

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*