Vanderbilt Mathews, Plaintiff-Appellant, *v.* Atlas Liquors, Inc., Defendant-Appellee and Cross-Appellant.

(No. 54258;

First District—April 29, 1971.

*Rehearing denied May 27, 1971.*

Arthur S. Gomberg and Joel H. Greenburg, both of Chicago, for appellant.

Harold A. Lieberson, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court sustaining the defendant's Section 72 motion to vacate a default judgment of $15,000 entered in favor of the plaintiff.

We reverse.

The relevant facts are as follows: Plaintiff filed a dram shop action against Atlas Liquors, Inc. on February 25, 1960. Summons was served at defendant's place of business which was then located at 3701 South Cottage Grove Avenue, Chicago, Illinois. The owners of Atlas at that time were Gertrude Mendez and Leon Mendez who forwarded the summons to their insurance company which in turn retained counsel to represent Atlas' interests. An answer was filed by said counsel on March 24, 1960. In 1962 Atlas Liquors moved from 3701 South Cottage Grove Avenue to its present address at 3645 South Cottage Grove Avenue, and a school was built at the site of the old location. This new address was reflected in the 1963 phone book and classified directory, as it was each year thereafter. On May 14, 1965, Atlas Liquors was purchased by Ray and Florence Weiss. Testimony was received to the effect that no notice of the dram shop suit was given to the Weisses at the time of purchase, nor was the suit listed on the bulk sales affidavit executed as part of the sale. On June 15, 1965, notice of motion to withdraw from the case was sent by the counsel retained by Atlas Liquors' insurance company. This motion was one of 1,200 filed with the Circuit Court due to the insolvency of the insurance company. The notice, addressed to 3701 South Cottage Grove Avenue, was sent by certified mail, and was returned marked "refused." Defendant's manager, who regularly took in the mail, testified that he never refused the letter at the proper address (3645 South Cottage Grove Avenue) and had no knowledge of such a notice being sent. The attorney's motion was granted, and on June 25, 1965, an order was issued allowing him to withdraw. On February 9, 1966, a default judgment was entered against defendant in the amount of $15,000. Plaintiff took no action on his judgment until May 10, 1966, when he recorded it with the County Recorder of Deeds. That same month, plaintiff's attorney attempted to have a citation to discover assets served upon Gertrude Mendez. In January of 1967 he attempted to have a similar citation served upon Burton Kolman, an officer at Atlas Liquors prior to the change in ownership. Both were returned marked "not found." In preparing these citations, plaintiff's attorney had used a 1965 Illinois Corporate Directory which listed the old officers rather than the Weisses. Finally, on March 6, 1969, three years and one month after the default judgment had been entered, plaintiff effected a garnishment of defendant's bank account. On March 14, 1969, defendant filed a motion under Section 72 of the Civil Practice Act asking that the default judgment be vacated. Upon a granting of that motion, the plaintiff appeals.

Defendant's theory is as follows: Although the corporation was served with summons and filed an answer through its insurance company, when the change of ownership occurred in 1965, the new owners were given

no notice of any suit pending, either in the bulk sales affidavit or in negotiations surrounding the transaction. The judge who entered the default judgment makes it a practice to instruct the parties taking a default judgment to notify the defaulted party within thirty days of its entry. Defendant was listed in the phone book at 3645 South Cottage Grove Avenue when the judgment was entered, and also was properly listed in the current Illinois Corporate Directory. Plaintiff made only unreasonable attempts to act on the judgment until three years had elapsed. The existence of the default judgment and the concomitant right to raise a Section 72 issue was thus fraudulently concealed from defendant, and, because he has a meritorious defense, the judgment should be vacated.

Plaintiff counters by claiming that the two-year statute of limitations contained in Section 72 is absolute, and that his actions did not amount to fraudulent concealment so as to toll the statute. He introduced the testimony of the attorney who proved up the default to rebut defendant's allegation that the trial judge instructed plaintiff to notify defendant that a default was entered against him. He contends further that the fact that he remained silent is not fraudulent concealment, and that no affirmative action was ever taken to purposely mislead defendant.

■■ The two-year statute of limitations set out in Section 72(3) is considered mandatory by Illinois courts except as to void orders. (*Irving v. Rodriguez* (1960), 27 Ill.App.2d 75, 79, 169 N.E.2d 145, Ill. Rev. Stat. 1967, ch. 110, par. 72(7).) In that the default judgment entered against defendant is not considered void by this court, the defendant must show that he was either under legal disability, duress, or that the ground for relief was fraudulently concealed from him if we are to consider the Section 72 motion properly granted. Ill. Rev. Stat. 1969, ch. 110, par. 72(3).

Because defendant has chosen the theory of fraudulent concealment in his attempt to avoid the statute of limitations in Section 72(3), we must examine that theory to determine its applicability to this case. In *Nogle v. Nogle* (1964), 53 Ill.App.2d 457, 202 N.E.2d 683, the court summarized the definitions of fraudulent concealment which have been developed through a series of earlier decisions. At page 464 the court states:

> "The concealment of a cause of action which will prevent the operation of the statute of limitations must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence by a person liable does not amount to fraudulent concealment of the cause of action. Such concealment must consist of affirmative acts or representations; there must be some

trick or contrivance or affirmative action intended to exclude suspicion and prevent inquiry." 25 ILP "Limitations," Section 92 at 267, 268.

It was said in *Skrodzki v. Sherman State Bank,* 348 Ill. 403, 407, 181 N.E. 325: "In *Lancaster v. Springer,* 239 Ill. 472, 88 N.E. 272, this section was construed as follows: 'The concealment of a cause of action which will prevent the operation of the Statute of Limitations must be something of an affirmative character designed to prevent, and which does prevent, the discovery of the cause of action * * *. Such concealment must consist of affirmative acts or representations,' citing *Fortune v. English,* 226 Ill. 262, 80 N.E. 781, and *Wood v. Williams,* 142 Ill. 269, 31 N.E. 681. In *Keithley v. Mutual Life Ins. Co.,* 271 Ill. 584, 111 N.E. 503, this court considered that section. It was there held that mere silence by the person liable is not concealment of a cause of action, but that such concealment must consist of affirmative acts or representations. It was there also held that fraudulent misrepresentations which form the basis of the cause of action do not constitute a fraudulent concealment in the absence of proof of acts or representations tending fraudulently to conceal the cause of action * * *."

■■ The *Nogle* case was favorably discussed and applied in *Antczak v. Antczak* (1965), 61 Ill.App.2d 404, 209 N.E.2d 838, where the court emphasized at page 413 that, "Mere silence of one liable does not amount to fraudulent conduct."

■■ Defendant attempts to distinguish *Nogle* and *Antczak* from the instant case by merely stating that they were decided upon different factual bases. However, defendant does little to enlighten this court as to what alternative theory he would adopt which would allow a decision favorable to him. Defendant cites *Elfman v. Evanston Bus Company* (1963), 27 Ill.2d 609, 190 N.E. 348. This case articulates the principle that Section 72 petitions invoke "equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances." We agree with these principles, but fail to see where they shed any light upon the issue facing this court, for the *Elfman* case was concerned with a petition filed well within the two years allowed by Section 72(3). Neither do any of the other cases cited by defendant present to us a theory upon which we can find that the statute of limitations in issue was tolled.

Defendant places great emphasis on the fact that the trial court repeatedly stated that its practice in default situations was to have the counsel for the party taking the judgment notify the defaulted party within 30 days that a judgment had been entered. While we would do nothing to discourage this practice, the record discloses that plaintiff's

counsel testified that the court never so instructed him. Furthermore, the court had no notes or other memoranda to contradict the witness on this point.

We must note that we are bothered by the facts and circumstances surrounding this case. When an insurance company goes under, and counsel retained by the insurance company withdraw from thousands of cases, the number of motions filed and notices sent pursuant thereto operates to create a confused situation such as we have here. Had there been an affirmative duty on a plaintiff to notify a defendant of a default judgment entered against him, this matter may have been viewed in a different light. However, the creation of such a duty is the prerogative of the legislature, not the judiciary, and although the result might seem harsh, we must take the law as we find it.

Finally, because we are ordering the judgment reinstated, we do not find it necessary to consider the issue raised on cross-appeal by the defendant.

Judgment reversed with directions to re-enter the judgment of February 9, 1966.

Judgment reversed and cause remanded.

McNAMARA, P. J., and DEMPSEY, J., concur.